### IRISH LESBIAN AND GAY ORGANIZATION, Plaintiff,

v.

### NEW YORK STATE BOARD OF ANCIENT ORDER OF HIBERNIANS, New York County Board of Ancient Order of Hibernians, and the New York City Police Department, Defendants.

No. 92 Civ. 1498 (PNL).

United States District Court, S.D. New York.

March 16, 1992.

Shearman & Sterling (R. Paul Wickes, Clare O'Brien, of counsel), New York City, for plaintiff.

Thomas W. Gleason (Ernest L. Mathews, Jr., Kevin Marrinan, Harvey S. Mars, of counsel), New York City, for defendant New York County Bd. of Ancient Order of Hibernians.

McKernan & Gatins (Patrick C. Gatins, Kevin P. McKernan, of counsel), Staten Island, N.Y., for defendant New York State Bd. of Ancient Order of Hibernians.

O. Peter Sherwood, Corp. Counsel of the City of New York (Florence A. Hutner, Asst. Corp. Counsel, of counsel), New York City, for defendant New York City Police Dept.

New York Civ. Liberties Union Foundation (Norman Siegel, Arthur Eisenberg, of counsel), Pollet & Pollet (Michael N. Pollet, Sybil H. Pollet, of counsel) New York City, amicus curiae in Opposition to Plaintiff's Motion for a Preliminary Injunction.

## OPINION AND ORDER

LEVAL, District Judge.

This is an action brought by the Irish Lesbian and Gay Organization ("ILGO") against the organizers of New York City's Saint Patrick's Day Parade. ILGO alleges that the New York State and the New York County Boards of the Ancient Order of Hibernians ("AOH") have violated the plaintiff's First Amendment free speech rights under the Constitution by failing to grant ILGO's application to march under its banner as an affiliated unit in the 1992 parade. It is apparently undisputed that the individual members of ILGO are free to march in the parade as guests of any affiliated participating unit. Under such circumstances, however, the parade rules would forbid them from carrying signs or banners, as only very limited categories of signs are permitted in the parade, consisting primarily of the flags of Ireland, the United States, and the banners of the recognized affiliated marching units. ILGO moves for a preliminary injunction ordering the Hibernians to allow ILGO to march in the parade on March 17, 1992, under their banner as an affiliated unit.

The controversy began in October 1990 when ILGO applied to the Parade Committee, appointed by the AOH County Board, for permission to march as an affiliated unit in the 1991 parade. It appears that access to participate in the parade is in most cases granted only to organizations, rather than to individuals, and that organizations which are granted affiliation may then invite individual participants to march in their unit. By letter dated January 25, 1991, ILGO's request was denied. ILGO was advised that there was a waiting list of applicant organizations and that ILGO's application would take its place as a new

request at the bottom of the list. The parade is so large and time-consuming that it is difficult to get it completed before dark. For this reason, the organizers limit the number of units permitted to participate. The organizers maintain a waiting list of applications in order of receipt. This waiting list at present includes nearly 60 organizations whose applications date back to December 1987. ILGO is approximately 40th on the list.

Shortly before the parade in 1991, Mayor David N. Dinkins undertook to negotiate a settlement that would provide for ILGO's inclusion in the parade. The Mayor proposed that the parade permit would extend the parade for an hour and that small representative groups from each of the organizations on the waiting list would be included. The Mayor also offered to provide volunteers and funding to help run the parade on this basis. The Parade Committee rejected the Mayor's offer. Eventually a compromise was reached under which the ILGO members were invited to march with Manhattan Division 7 of the A.O.H.

There is controversy over what happened at the 1991 parade. Witnesses for ILGO testified that when the ILGO participants reached the reviewing stand at 5th Avenue and 67th Street, members of the review committee in the grandstand turned their backs in a gesture of insult. Witnesses on behalf of the Hibernians testified that ILGO participants engaged in insulting anti-Catholic and provocative conduct both in front of St. Patrick's Cathedral and in front of the reviewing stand at 67th Street. The Parade Committee received numerous complaints about the conduct of the ILGO members.

In the fall of 1991, ILGO wrote to the Chairman of the Parade Credentials Committee to verify that ILGO's application was still on file. The letter requested information "on the status of our application." ILGO received no reply. On December 4, 1991, ILGO wrote again. No reply was issued. The Mayor once again undertook efforts to secure ILGO's admission to the parade. Discussions were held during December and January.

On January 21, 1992, the Hibernian National and State Boards issued a joint statement asserting that

[The organizers of the parade] are in full agreement, of one mind of one heart and of one determination ... that no organization or organizations are allowed to use New York City's 231st Annual St. Patrick's Day Parade on March 17, 1992 as a vehicle to publicly insult any person or group watching or reviewing the parade.

The outrageous behavior and conduct of the Irish Lesbian and Gay Organization (ILGO), and its several well known, non-Irish support groups, on Fifth Avenue and particularly in front of St. Patrick's Cathedral and at the Parade Reviewing Stand, during the 1991 Parade, mandated that ILGO not be permitted to participate in the 1992 Parade.

The statement concluded that the Ancient Order of Hibernians "is and has been for the past 156 years, steadfastly committed to one of its main founding purposes: to uphold, defend and protect the Roman Catholic Church, its priests and bishops, its teachings and tenets." A release issued by the Parade Chairman to the Irish Echo stated that "no group that has a position contrary to the teachings of our Catholic faith has a place in our Parade."

On January 23, 1992, the New York City Human Rights Commission issued a complaint against the parade organizers charging violation of the Administrative Code of the City of New York by unlawful discrimination against ILGO on the basis of sexual orientation. ILGO intervened in the proceedings of the Human Rights Commission and a hearing was scheduled. On March 2, 1992, fifteen days before the parade, ILGO filed this action.

On March 10, counsel met with the court and agreed that, in view of the lack of time, the evidence to be offered on this preliminary injunction motion would consist of portions of the transcript taken at the City Human Rights Commission hearing plus whatever affidavits were appended to the parties' moving and opposing papers. Submissions were completed by 6:30 p.m. on

Wednesday evening, March 11, and argument was heard by the court at 9:30 a.m. on March 12.

On the afternoon of March 13, 1992, Chief Administrative Law Judge Rosemarie Maldonado issued a Recommended Decision and Order in the City Human Rights Commission Proceeding. Her opinion recommends denial of an order requiring inclusion of ILGO in the St. Patrick's Day Parade on the grounds that such an order would violate the Hibernians' right of free expression.

### Standard of Proof

The standard for grant of a preliminary injunction in the Second Circuit requires the applicant to show irreparable harm and either likelihood of success on the merits or a fair question for litigation with the balance of hardships tipping decidedly in favor of the applicant. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). There is, however, strong reason to doubt whether the traditional test for preliminary injunction is properly applied to this case, as that test is designed for circumstances quite different from these. The test envisions an applicant who claims the right to eventual, permanent injunctive relief and asserts that he will suffer irreparable harm if temporary injunctive relief is not given for the interim period before final adjudication becomes available. The test is designed to provide the fairest standard for regulating the interim period prior to final trial and judgment on the merits. For these reasons, if the applicant will suffer irreparable harm in the waiting period (and especially if the harm faced by the applicant prior to the grant of an injunction would markedly exceed the harm that would be suffered by the adversary from the grant of a temporary injunction), the law permits such temporary relief to be granted on a lesser showing than will ultimately be necessary to secure a final injunction.

■ Two reasons militate against the traditional standard in this case: First, because the lawsuit concerns ILGO's claimed right to march tomorrow before final trial can be held, the grant of a preliminary injunction would not merely govern the holding pattern pending final adjudication; it would award entire victory, at least with respect to the 1992 parade, to ILGO. By the time final trial can be reached, the court's injunctive power will no longer be able to affect whether plaintiff does or does not march in the 1992 St. Patrick's Parade, as it will have passed. Secondly, defendants have made a strong showing that plaintiff is chargeable with laches. It was evident to ILGO last December that defendants were unwilling to admit it to the parade as an affiliated unit. If there was any doubt in December, this became unmistakably clear on January 21, 1992, when defendants issued their joint statement of "one mind, one heart, one determination on a matter of major concern and great importance to all who love New York City's historic landmark St. Patrick's Day Parade." At that point eight weeks remained before the parade. Had ILGO promptly initiated its lawsuit, there would have been sufficient time on an expedited schedule for both sides to prepare and for the court to conduct final trial on the merits, reaching a final determination of the question of plaintiff's right to march. By waiting six of the eight weeks before initiating its action, ILGO eliminated the possibility of final trial before the parade and reduced to practically nothing the Hibernians' opportunity to prepare its defense. Thus, by its delay, plaintiff stands to gain a double advantage: First, had there been time for trial, plaintiff could not win except by actually prevailing on the merits. Now because its own delay requires the dispute to be decided on a preliminary injunction motion, plaintiff can win its objective in the lawsuit without actually proving entitlement, if it proves the lesser standard of *likelihood* of success on the merits. The second advantage gained by ILGO is that by delaying the institution of the action it has reduced from seven weeks to one the Hibernians' opportunity to prepare their defense.

Because the delay was unnecessary and because it substantially prejudiced the defendants, this constitutes laches. Defen-

dants contend the court should simply deny ILGO's motion by reason of laches. I am reluctant to go so far. Nonetheless, there is a strong justification, based on plaintiff's unnecessary and prejudicial delay, that at the very least plaintiff should be required to meet the same standard of proof that would have been required if plaintiff had brought the action in timely fashion. In other words, plaintiff should not receive the benefit of a reduced standard of proof that is designed for circumstances where the plaintiff has inadequate time to protect itself from serious harm if it is the plaintiff's own unnecessary delay (at the defendants' expense) that has put the plaintiff in that predicament.

In the end I need not determine whether these circumstances justify imposing a higher standard of proof than mere *likelihood* of success because I conclude for reasons set forth below that the result would be the same under any standard.

### The Contentions of the Parties

1. Freedom of Speech and Association

Plaintiff and defendants each claim it is they whose First Amendment freedom of speech and/or association is at stake in the controversy.

Plaintiff's principal contention is that it has been excluded illegally from participation in the parade by reason of the defendants' disapproval of homosexuality and because of the parade organizers' commitment to uphold the Roman Catholic Church's opposition to homosexuality. Although plaintiff concedes that organizers of a parade would be entitled to exclude the plaintiff on these grounds if the parade were a privately sponsored event, plaintiff contends that the St. Patrick's Day Parade, which is by far New York City's biggest parade, is so intertwined with the government of the City of New York that the parade organizers have come to act on behalf of the City. Plaintiff therefore contends that the actions of the parade organizers constitute "state action" within the meaning of the Constitution. Accordingly, plaintiff argues that (i) the Hibernians may not interfere with ILGO's First Amendment right to participate in the parade, (ii) the parade may not discriminate against ILGO on the basis of sexual preference, and (iii) the parade's espousal of the doctrines of the Roman Catholic Church constitutes a forbidden establishment of religion in violation of the First Amendment.

ILGO relies primarily on Judge Weinstein's decision in *North Shore Right to Life Committee v. Manhasset American Legion Post No. 304, Town of North Hempstead, et al.*, 452 F.Supp. 834 (E.D.N.Y.1978). In that case an anti-abortion group protested its exclusion from the Memorial Day Parade in the Town of North Hempstead by the American Legion which organized the parade. Judge Weinstein ruled that because Memorial Day is a public holiday, proclaimed by the President and ordered by the statutes of the State of New York to memorialize the deaths of soldiers of the United States killed in action, the American Legion as organizer of the parade was not acting privately but was acting on behalf of the local government. It was therefore bound by the constitutional restraints that would apply if the town government had organized the parade itself. The American Legion had barred the plaintiff group from participation in the parade because the plaintiff's involvement would have violated the Legion's constitution requiring the Legion to remain nonpolitical. Judge Weinstein ruled that this was not an appropriate ground for a *governmental* entity to exclude a would-be exerciser of free speech. Because the American Legion was acting in a governmental capacity, its exclusion of a right-to-life advocacy group was ruled unlawful. ILGO contends that the same considerations forbid the Hibernians, acting as a surrogate for the City of New York, from excluding ILGO from the St. Patrick's Day Parade.

The Hibernians make two contentions in defense. Although conceding that if the City of New York sponsored the St. Patrick's Day itself, it would be forbidden from excluding ILGO by reason of objection to homosexuality or by reason of the antipathy of the Catholic Church to homo-

sexuality, the Hibernians, joined by the New York Civil Liberties Union as amicus, assert that they are private organizations, that the St. Patrick's Day Parade is a privately sponsored function, and that the constitutional restrictions that would apply to an entity of government have no bearing on their actions. The Hibernians assert their own right under the First Amendment to conduct their parade according to their own beliefs making their own statements. They point out that the parade receives no funding from the City of New York,[1] and that the City of New York (apart from the cooperation of police and sanitation) plays no role in planning the parade activities.

The Hibernians point out that their parade is designed for private objectives and differs in many respects from a governmentally sponsored event. The Hibernians design their parade as an event specifically celebrating Irish and Roman Catholic heritage. They do not allow banners or signs of any kind except the flags of Ireland the United States and the identifying banners of marching units;[2] they do not allow the parade to be used to support political causes (and have gone so far as to exclude a right-to-life group in spite of its espousal of Roman Catholic doctrine); and they seek to exclude controversy. The Hibernians concede that a "state" sponsored parade could not operate on these principles. They insist, however, that as private organizations, they are exercising their own constitutionally guaranteed freedom of speech by running their parade in this fashion. They assert that, regardless whether others agree with their opinions and exclusions or find them offensive, they are entitled under the First Amendment to conduct their parade making such statements and associations as they see fit. *See, e.g., Collin v. Smith,* 578 F.2d 1197 (7th Cir.1978); *Invisible Empire of the Knights of the Ku Klux Klan v. Mayor of Thurmont,* 700 F.Supp. 281 (D.Md.1988).

In support of their argument, the defendants cite *Gay Veterans Assn. v. American Legion,* 621 F.Supp. 1510 (S.D.N.Y. 1985). In that case, a gay veterans organization sought an injunction against the American Legion (as organizer of the Veterans Day Parade) requiring that it permit the plaintiff to march. Judge Motley denied the application finding that the Legion was acting as a private entity in administering the parade. In distinguishing Judge Weinstein's ruling in *North Shore,* Judge Motley relied in part on the intervening decision of the Supreme Court in *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), in which the Supreme Court ruled that a private group does not become burdened with governmental limitations merely because its actions serve a public function, the question being rather whether the function performed "has been 'traditionally the *exclusive* prerogative of the state'." *Id.* at 842, 102 S.Ct. at 2772. The Hibernians argue that this case is *a fortiori* to *Gay Veterans* because St. Patrick's Day, unlike Veterans Day, is not a legal state holiday. *Cf. North Shore v. American Legion.*

### 2. The Waiting List of Applications Prior to ILGO's.

■ The Hibernians' second line of defense does not rely on constitutional doctrine. The Hibernians assert that ILGO cannot be admitted to the parade tomorrow because at best ILGO is behind numerous prior applicants for affiliation whose applications have been on file long before plaintiff's. They assert that even if the parade organizers are forbidden from excluding ILGO by reason of their own objections to homosexuality, by reason of ILGO's provocative conduct in the 1991 parade, or by reason of the Hibernians' espousal of the Catholic Church's rejection of homosexuality, there would still be no justification for ILGO taking precedence over the organizations that applied long before it. The evidence shows that the parade is full. It

---

1. Although there is no dispute that the City contributes extensive *services* to the conduct of the parade, including especially police, sanitation, and the use of the streets, the Hibernians point out that this is true for every privately sponsored parade in the City.

2. Since 1948 the parade has also permitted signs saying, "England Get Out of Ireland."

cannot accommodate additional affiliated organizations without others dropping out or without restricting the size of the participation of prior entrants. The waiting list includes applicants dating back to December 3, 1987 and numbering approximately 40 prior to the time of ILGO's initial application on October 5, 1990. The defendants point to letters of protest received from organizations on the waiting list questioning how ILGO could gain priority over organizations ahead of them on the waiting list.

ILGO opposes this contention by questioning the bona fides of the waiting list and suggesting that the waiting list is merely an illegal device to discriminate arbitrarily in favor of some and against other applicants. However, ILGO has made virtually no showing to undermine the genuineness of the waiting list. The evidence submitted by the A.O.H. defendants shows that, while preference is given to Hibernian member organizations, non-Hibernian applicants for affiliation are placed on the list and await their turn, ordinarily for two or three years, before being considered by the credentials committee. The testimony showed that the organizations that were considered by the credentials committee in December 1991 for accreditation to the 1992 parade were indeed the oldest on the list whose applications dated from December 1987 and January 1988, long prior to ILGO's October 5, 1990 application. ILGO's efforts to impeach this evidence have been almost entirely unsuccessful. ILGO's argument that the list is a sham is merely conjectural. It is not supported by proof. Thus, even if ILGO could show that state action standards are applicable and that the organizers may not lawfully bar it from participation for content- or religion-based reasons, that in no way undercuts the fact there is a two year long list of applicants who have a prior claim to be admitted to the parade tomorrow.

ILGO argues that it is not meaningfully on the waiting list. It contends it has already been rejected, not only for the present but also for the future. It contends that the defendants are disingenuous in claiming that ILGO occupies a meaningful place on the waiting list. And in the City Human Rights Commission proceeding, Judge Maldonado agreed, finding that ILGO's place on the waiting list did not offer a real opportunity to be admitted into the parade in the future, as ILGO had already been effectively rejected.

Assuming this Court were to agree that ILGO has already been rejected so that its apparent place on the waiting list is only a pretense, that might affect other issues that will arise in this litigation, but it would have no effect on the present motion for preliminary injunction for ILGO's admission to the parade tomorrow. Even if ILGO had been refused a place on the waiting list, that would not entitle ILGO to enter tomorrow's parade. For regardless whether defendants have discriminated illegally, and regardless whether defendants have lied to plaintiff about a meaningful place on the waiting list for future consideration, the Court would have no justification for jumping ILGO over two years of prior applicants who are still waiting for admission.

The issue is perhaps more clearly illustrated in the context of assumed hypothetical facts. Let us assume that a city maintains an apartment block in which, because of desirable location, excellent maintenance and low price, the apartments are much in demand. Applicants are taken from a list in order of priority of application whenever an apartment becomes available. Assume the waiting list numbers 30 applicants, which can be expected, based on past experience, to take four years to clear. Assume a new applicant arrives who is an adherent of an unpopular religious cult. The City Administrator illegally discriminates against the cult and either rejects the new applicant outright, or disingenuously puts him on the waiting list having already determined that he will be rejected when he reaches the top of the list. He sues and, when the first apartment becomes available, moves for a preliminary injunction demanding that he be given occupancy. No matter how well founded his suit may be for illegal discrimination, his motion for preliminary injunction for the first apartment must be denied, simply because there are 30 applicants ahead of him who must first be accommodated.

Assuming without deciding that ILGO could show it was the victim of an unconstitutional rejection, that is its position: it may not be admitted to tomorrow's parade in preference to the long list of prior applicants. Being a victim of unconstitutional discrimination entitles one to various forms of relief, sometimes including damages, but it does not ordinarily give one priority over bona fide prior claimants.

Even if ILGO has shown that *its place* on the waiting list is a pretense, the list is otherwise real. ILGO thus fails to satisfy either branch of the *Jackson Dairy* test for a preliminary injunction. It has shown neither likelihood of success, nor even a fair question for litigation, in its effort to discredit the waiting list so as to gain immediate access to the parade.

I note further, assuming that the customary *Jackson Dairy* test is applicable, that ILGO is more favored by the first branch of the test than the second. Although the second branch carries a lower threshold of proof on the merits than likelihood of success, it requires an additional showing that the balance of hardships decidedly favors grant of the preliminary injunction. Plaintiff cannot satisfy this branch of the test.

■ I recognize that ILGO does indeed suffer irreparable harm through exclusion from the parade. The harm is of a symbolic nature. ILGO seeks, through inclusion in the parade, a recognition of status so long denied to homosexuals. Such loss of symbolic recognition is recognized in law as an irreparable harm that can satisfy this element of the standard for preliminary injunction.

The problem is that a *grant* of a preliminary injunction would cause harm of similar order to the defendants. They contend that their right of free expression and association entitles them to conduct a parade that vindicates their loyalty, respect and deference to the beliefs taught by the Roman Catholic Church. They contend a serious symbolic offense would be caused to them were the Court to require the inclusion of an affiliate whose banner and message challenge and offend the teachings of the Roman Catholic Church. They contend they would be further harmed by the court's frustration of their lawful objective to keep their parade free of confrontation and political agenda.

I conclude that while denial of an injunction inflicts harm on plaintiff, the grant of an injunction would inflict harm of similar proportions on defendants. Plaintiff thus cannot satisfy the aspect of the second branch of the *Jackson Dairy* test that requires a showing of a balance of hardships "decidedly" in favor of the party seeking that injunction.

I therefore refrain from reaching the provocative issue of whether the legally recognizable right of free speech belongs to ILGO or to the Hibernians. The resolution of that issue cannot affect ILGO's application for an injunction placing it in tomorrow's parade. Even if the Court were to find a constitutional violation, ILGO would still not be entitled to jump the 40 prior applicants who precede it on the waiting list. Courts are commanded to avoid making unnecessary constitutional adjudications.

Accordingly, ILGO's motion for preliminary injunctive relief is denied.

SO ORDERED.