### NEW YORK COUNTY BOARD OF ANCIENT ORDER OF HIBERNIANS, Plaintiff,

v.

**David N. DINKINS, individually and in his Capacity as Mayor of New York City; The City of New York, The Police Department of the City of New York, Raymond Kelly, as Police Commissioner of the City of New York, and St. Patrick's Day Parade Committee, Inc., Defendants.**

No. 93 Civ. 0281 (KTD).

United States District Court,
S.D. New York.

Feb. 26, 1993.

___

---

Gleason & Mathews, New York City (Ernest L. Mathews, Jr., Maura R. Cahill, Paul H. Hugel, of counsel), for plaintiff.

O. Peter Sherwood, Corp. Counsel of the City of New York, New York City (Florence A. Hutner, Lorna B. Goodman, Asst. Corp. Counsels, of counsel), for defendants David N. Dinkins, The City of New York, The Police Dept. of the City of New York, and Raymond Kelly.

Gilroy Downes Horowitz & Goldstein, New York City (Lawrence C. Downes, of counsel), for defendant St. Patrick's Day Parade Committee, Inc.

Shearman & Sterling, New York City (R. Paul Wickes, Clare O'Brien, of counsel), for intervenors Irish Lesbian and Gay Organization.

New York Civil Liberties Union Foundation, New York City (Norman Siegel, Arthur N. Eisenberg, of counsel), for amicus curiae.

Burlingham Underwood, New York City (John G. Ingram, Philip A. Nemecek, of counsel), for amicus curiae St. Patrick's Society of Brooklyn, St. Patrick's Society of the Borough of Queens, United Irish Counties Ass'n of New York, Inc. and The Grand Council of United Emerald Societies, Inc.

Wilmer, Cutler & Pickering, Washington, DC (Thomas Clark, Gary Born, of counsel),

for amicus curiae Religious Coalition and Parade Coalition.

Putney, Twombly, Hall & Hirson, New York City (Norman Fassler, of counsel), for amicus curiae Religious Coalition and Parade Coalition.

Center for Constitutional Rights, New York City (Joan P. Gibbs, Suzanne L. Shende, of counsel), for amicus curiae.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

This is one of those unusual cases where the issue presented by all counsel has remained constant and clear. It is the facts surrounding the issue that seem to be in a total state of flux.

Broadly stated, the issue is whether the City of New York ("City") can compel the Ancient Order of Hibernians ("AOH")[1], a private and long-standing sponsor of New York's St. Patrick's Day Parade, to alter the message that it wishes to convey in the Parade by requiring it to include, in the Parade and under their own banner, the Irish Lesbian and Gay Organization ("ILGO"), an organization whose tenets are allegedly inconsistent with the message of the Parade's sponsors.

At my request, counsel for the parties, prepared and filed an agreed statement of uncontested facts after I held a conference on Tuesday, February 2, 1993. I have adopted as many of these agreed upon facts as possible. I scheduled argument on Monday, February 22, 1993, and was apprised that certain facts had changed. At that hearing I advised the parties not to change the facts again. No matter what protestations of good will the parties offered on that date, the facts have changed once again.

Indeed, one of the most difficult tasks in this matter is to get a handle on the facts and the real position of the parties. At times it seemed that the attorneys were acting as navigators attempting to get a fix on their location while aboard a melting ice flow in the midst of a tempest. Counsel for the City, for example, argued at one point, that the City would be willing to permit, without conditions, the AOH to march in a parade on some city street other than Fifth Avenue on March 17th at 11:00 a.m. *See* City Defendants' Memorandum of Law In Opposition to Plaintiff's Motion for Summary Judgment and In Support of City Defendants' Cross-Motion for Summary Judgment ("City's Mem.") at 13; Hutner Affidavit ¶ 4 and Exh. A, dated Feb. 11, 1993. The City's latest position, however, is that the City would deny the AOH the Parade permit unless AOH "includes the Irish Lesbian and Gay Organization in the parade under its own banner." *See* Letter to this court from Corporation Counsel, dated Feb. 17, 1993.

At one point, over a year ago, the AOH argued to Judge Pierre Leval of this court that there was a waiting list of organizations who wanted to participate in the St. Patrick's Day Parade and that ILGO would have to wait its turn to be considered for inclusion in the Parade. Judge Leval denied relief to ILGO for various reasons including, in part, because he believed the AOH had a valid waiting list and ILGO could not jump in front of other organization applicants who precede it on the list. *ILGO v. N.Y. State Board of Ancient Order of Hibernians,* 788 F.Supp. 172, 179 (S.D.N.Y.1992). Yet, it may well be that the "waiting list" was merely a sham and an "attempt to diffuse the situation," because the AOH has now stated that under no circumstances would they allow ILGO to march. Transcript, Argument held February 22, 1993 ("Tr.") at 7–8.

Within the last two weeks, ILGO protested to the state court that the dispute as presented there was moot. Yet, in argument to this court on February 22, 1993, ILGO took the position, without any change of facts, that this court should abstain in deference to the state court. Tr. at 59.

## STATEMENT OF FACTS

The St. Patrick's Day Parade has been a fixture of the New York City scene for well

---

1. AOH in this opinion will refer to the New York County Board of the AOH. The State and National AOH organizations will be referred to as "State AOH" or "National AOH."

over two hundred years. The first New York St. Patrick's Day Parade took place in 1762. The AOH has sponsored the Parade virtually every year out of the last one-hundred and fifty-three years, and in the years that the AOH has not conducted the Parade, an affiliated Hibernian group has done so. For over seventy years, the Parade has taken place on Fifth Avenue starting at 11:00 a.m. on the day of the Roman Catholic liturgical celebration of the feast day of St. Patrick. This day generally is March 17th, but the liturgical celebration is changed when March 17th falls on a Sunday.

The AOH is an organization comprised of Roman Catholic men of Irish descent who comply with the Roman Catholic rite's requirement that every adult must receive communion at least once during the Easter Season. The AOH has apparently set out other strictly religious requirements for membership. Every year, under the guidance of the AOH, each contingent that marches in the St. Patrick's Day Parade selects two delegates to be part of the "St. Patrick's Day Parade and Celebration Committee" ("Parade Committee"). This Parade Committee is responsible for taking care of the myriad details and arrangements inherent in running the Parade.

The AOH and the Parade Committee privately finance the Parade exclusively by means of private donations. The only public assistance received by AOH is for the police and sanitation services, which the City affords to every public gathering in the City.

The AOH, the Grand Marshal of the Parade, and members of the Parade Committee start the St. Patrick's day celebration by attending mass at St. Patrick's Cathedral on Fifth Avenue. The Roman Catholic Archbishop of New York reviews the Parade from the steps of the Cathedral. Various units in the Parade carry banners depicting St. Patrick and other saints of the Roman Catholic Church. Notwithstanding this connection to the Roman Catholic Church, it is abundantly clear that some of the marchers participating in the St. Patrick's Day Parade are neither members of the AOH nor members of the Roman Catholic Church. Indeed, anyone who has watched the St. Patrick's Day Parade can attest to the fact that not everyone in the Parade is Irish, although at times it has been said that on St. Patrick's day, everyone in New York is Irish. The Parade marchers generally number in the vicinity of 150,000, with between one and two million on-lookers. The New York St. Patrick's Day Parade is carried by at least one local television station and quite often parts of it are shown on national television.

The St. Patrick's Day Parade is billed as the largest annual civilian Parade in the world. The Parade celebrates, *inter alia*, freedom and Irish culture and heritage. Traditionally, elected officials have marched in the Parade regardless of their religious or political affiliation or of their position on any issue. Joint Statement of Uncontested Facts ("Jt.Stmt.") at ¶ 13.

The AOH has applied for and received a Parade permit from the New York City Police Department ("NYPD") authorizing it to conduct the St. Patrick's Day Parade on Fifth Avenue for more than seventy years. Jt. Stmt. at ¶ 9. The NYPD maintains a list of organizations that traditionally conduct annual Parades in the city and has, in the past, had the practice of granting permits to the organizations on that list. The AOH has been the organization on that list which conducts the St. Patrick's Day Parade. Jt. Stmt. at ¶ 10.

The AOH has adopted rules for the Parade to prevent any group or person from using the Parade as a vehicle or forum to pursue any political, social or commercial agenda inconsistent with the message, values and viewpoint of the AOH[2], or whose purposes, principles or agenda are inconsistent with the teachings of the Roman Catholic Church. Jt. Stmt. at ¶ 12. It is the position of the AOH that the determination of whether a particular purpose, principle or agenda is inconsistent with the teachings of the Roman Catho-

---

**2.** In the past, the AOH has excluded from the Parade a number of proposed contingents, including Robert Kennedy as a political office seeker; the Right–To–Life Organization; the Bud-weiser team of horses; etc. *See* Decision of Administrative Law Judge Maldonado, at 8, attached to the Hartnett Affidavit as Exh. 7.

lic Church rests within the discretion of the AOH.

In October, 1990, ILGO requested that the Parade Committee allow it to march under its own banner as an affiliated unit in the 1991 Parade. The Parade Committee denied ILGO's request for various reasons. AOH now maintains that the denial of ILGO's request was occasioned by the AOH's "policy against the inclusion of groups advocating messages contrary to the parade sponsor's [message] and the Catholic Faith." Jt.Stmt. at ¶ 14.

Thereafter, the City administration urged the AOH to admit ILGO to the 1991 Parade. When AOH refused to do so, a compromise was struck whereby ILGO members were permitted to march in 1991, not as an affiliated unit, but as guests of a Hibernian unit. Mayor Dinkins marched with ILGO rather than at the head of the Parade, where the Mayor usually marches. Jt.Stmt. at ¶¶ 14, 15. All of the parties agree that the "1991 Parade experienced discord and unseemly interchanges between ILGO members and the Parade's audience." Jt.Stmt. at ¶ 16.

I cannot envision a Parade put on by any organization that would restrict its participants solely to those individuals who have never sinned. Such a gathering surely would be quite small in number, and those who would hold themselves out as entitled to participate most likely would be hypocrites.

Statistically speaking (150,000 marchers × 200 plus years), there seems to be little possibility that 1991 was the first year gays or lesbians marched in the St. Patrick's Day Parade. Indeed, it would appear that over the years the Parade participants surely included certain individuals whose sexual orientation would not meet with the public approval of the AOH and the Parade Committee. Whether the AOH and the Parade Committee knew of the sexual orientation of such participants at the time of those Parades, is unclear. The AOH maintains, however, that individual members of ILGO (and those marchers whose sexual orientation is different from that approved of by the AOH) are welcome to march in the Parade *without* a *banner* as guests of the various Parade contingents. Neither the City nor ILGO

contest the good faith of this offer, nor is there any basis to doubt that it is the policy of the AOH and the Parade Committee. Indeed, it seems that where there have been organizations not permitted to march as identifiable organizations, their members have still been included in the Parade; *e.g.*, the Right–To–Life Organization.

I must conclude, therefore, that the true reason the AOH and the Parade Committee seek to exclude ILGO is because ILGO would insist on marching under a separate banner that would, in effect, identify the AOH as condoning sexual practices contrary to the message that the AOH believes the Parade should convey. Accordingly, I do not address the arguments regarding ILGO's exclusion on the basis of a waiting list or as a consequence of its behavior in the 1991 Parade.

With respect to the 1992 Parade, the Police Commissioner awarded the permit for the Parade to the State Branch of the Ancient Order of Hibernians ("State AOH"). This precipitated litigation in the state courts which eventually was settled with the AOH conducting the Parade pursuant to the permit issued to the State AOH.

On January 23, 1992, the New York City Commission on Human Rights ("HRC") commenced a proceeding pursuant to the City Human Rights Law to compel compliance with §§ 8–107(2) and 8–108.1 of the New York City Administrative Code. In that proceeding the HRC alleged that the AOH discriminated against ILGO because of the sexual orientation of that group's members. A cease and desist order was sought against the AOH, and a further order was sought from the HRC for the establishment and maintenance of a parade application system for the New York St. Patrick's Day Parade under the continuing supervision of a Commission Administrative Law Judge. On February 17, 1992, ILGO was permitted to intervene as a party in the HRC proceeding. Hearings were held on March 6th and 9th, 1992, before the Commission's Chief Administrative Law Judge Rosemarie Maldonado.

On March 13, 1992, the HRC Administrative Law Judge issued a recommended deci-

sion, the conclusions of which included: "(1) that the Parade was a public accommodation subject to the Human Rights Law; (2) that plaintiff had violated the Human Rights Law by excluding ILGO in 1991; and (3) that the application of the City Human Rights statute to the Parade would violate the First Amendment rights of the Parade sponsors." Jt. Stmt. at ¶ 18.

ILGO was not permitted to march as an affiliated unit in the 1992 Parade. However, apparently at the insistence of Mayor Dinkins, ILGO was permitted to hold its own demonstration from 60th Street to 66th Street on Fifth Avenue just prior to the Parade, and was given a special place on Fifth Avenue cordoned off by the police from which to "review" the Parade. Virtually every elected city official who normally marches in the AOH Parade, chose instead to march in ILGO's Parade. Although the Mayor was ill and could not march, "he announced that, if he could, he would march in ILGO's Parade." Jt.Stmt. at ¶ 19.

On October 27, 1992 the City Human Rights Commission rendered a final decision and order. The Commission adopted its Administrative Law Judge's recommended decision and order with respect to the first two holdings thereof, but ruled that the application of the Human Rights Law would not violate the sponsor's First Amendment rights.

Specifically, the Commission held as follows:

> In order to prevail, Respondents [i.e., AOH] must demonstrate that application of the Human Rights Law's prohibition against discrimination on the basis of sexual orientation to its Parade procedures would unconstitutionally infringe upon Respondents' rights of free speech, expressive association and free exercise as guaranteed by the First Amendment to the United States Constitution and/or by the New York State Constitution, Article 1, Sections 1, 3, 8 and 9. We find that Respondents have failed to make such a showing.

> Respondents argue that the Parade is a celebration of Irish Roman Catholic heritage. [ (footnote omitted) ]. They allege

that among the unwritten requirements for inclusion in the Parade is that no group admitted have a political agenda or an agenda contrary to the teachings of the Roman Catholic Church. They argue that ILGO advocates the right to pursue a homosexual lifestyle and is thus in violation of Church doctrine.

\*     \*     \*     \*     \*     \*

We disagree with the Administrative Law Judge's analysis that, under the *Roberts* test, the relief requested by Complainant cannot be granted. Rather, we find that under this test the relief requested by Complainant must be granted.

The characteristics of the Parade define the parameters of the First Amendment rights implicated. After examining the record below and reviewing the parties' comments, we find that the St. Patrick's Day Parade is a secular event which is a celebration of a broad range of values surrounding Irish heritage. In her Findings of Fact, the Administrative Law Judge found that the Parade celebrates secular, religious, cultural, historical, civic and numerous other aspects of Irish culture.... Respondents' associational right is thus the right to associate with persons who support the broad celebratory goals of the Parade rather than, as Respondents argue, the right to associate merely with those who adhere to any one element of Irish heritage, such as Catholicism.

\*     \*     \*     \*     \*     \*

For the above reasons, Respondents' contention that the Parade represents symbolic speech of a type or character which would be unconstitutionally altered by the inclusion of ILGO is unpersuasive.

We hold that inclusion of ILGO would not impair Respondents' right of association. The fact that the Parade is sponsored by an Irish–Catholic organization does not change the analysis here. The right of association contemplates not merely the nature of the association, but the message conveyed or the ideas expressed by way of that association. *See Roberts* [v.

*U.S.*] 468 U.S. 609 [104 S.Ct. 3244, 82 L.Ed.2d 462] [ (1984) ].

\*   \*   \*   \*   \*   \*

In general, in like cases involving parades, the degree of exclusivity or diversity will be a factor to be considered. However, the fact that the organizers of a given parade open it to some does not necessarily mean that the state may require them to open it to all who express an interest in participating. Thus, we may envision a scenario, perhaps even in the St. Patrick's Day Parade, where exclusion would be appropriate. This would be determined, however, on a case-by-case basis. Where a parade organizer shows that its First Amendment interests take precedence, it will prevail on the second prong of the *Roberts* test. Respondents simply have not made this showing here.

*New York City Commission on Human Rights v. Ancient Order of Hibernians in America, Inc., et al.,* Case No.: MPA–0362 (Oct. 27, 1992) at 4–13, attached to Hartnett Affidavit at Exh. 8. (citations omitted).

It is interesting to note that in determining the question as to whether a parade can be a "public accommodation," neither the Administrative Law Judge nor the New York City Human Rights Commission makes any reference to a judicial or administrative opinion in a case involving parades. Apparently, the closest to a parade-type decision that the Administrative Law Judge and the Commission could find to support their determination that the Parade be regarded as a public accommodation is a case involving the New York City Marathon. *New York Roadrunners Club v. State Division of Human Rights,* 81 A.D.2d 519, 437 N.Y.S.2d 681 (1st Dep't 1981), *aff'd,* 55 N.Y.2d 122, 447 N.Y.S.2d 908, 432 N.E.2d 780 (1982).

An action was commenced in the Supreme Court of the State of New York, New York County, to review the decision of the City Human Rights Commission. In the same proceeding the Commission cross-petitioned for enforcement of its order. The case, entitled *Beirne v. New York City Commission on Human Rights,* was assigned to Justice Alice Schlesinger.

Meanwhile, on November 2, 1992, the AOH applied to the New York City Police Department for a parade permit allowing it to conduct the 1993 St. Patrick's Day Parade. Applications for a permit were also filed by two other organizations: (i) the St. Patrick's Day Parade Committee, Inc. (this membership corporation is not to be confused with the Parade Committee mentioned above. It will be referred to henceforth as the "Corporate Committee"); and, (ii) the Brooklyn Night Court Emerald Society. This was the first time ever that three applications for the permit for the St. Patrick's Day Parade were submitted. Jt.Stmt. at ¶ 22.

On December 10, 1992, the Police Department, for the first time, required the applicants for the St. Patrick's Day Parade permit to submit information concerning their plans for the Parade, including the identity of all marching units. Jt.Stmt. at ¶ 23. Apparently all three of the applicants complied with this request.

The *Beirne* case was argued before Justice Schlesinger on January 5, 1993. She took the matter under submission, promising a decision during the week of January 18, 1993. Jt.Stmt. at ¶ 24. On January 8, 1993, the Police Commissioner of New York, Raymond Kelly, announced that he had awarded the permit for the St. Patrick's Day Parade to the Corporate Committee for the following reasons: "(1) that the views and practices of plaintiff [AOH] in excluding ILGO were inconsistent with the City's 'policy of inclusion'; (2) that the City Human Rights Commission had determined that 'the sponsors of the 1992 Parade, the Ancient Order of Hibernians, violated the City Human Rights Law by excluding' ILGO; and (3) that planning for the Parade needed to proceed expeditiously and could not await judicial review of the Commission decision in the *Beirne* case." Jt.Stmt. at ¶ 25.

Apparently the briefs in the *Beirne* case were filed on or about January 10, 1993. On January 11, 1993, Justice Schlesinger ruled:

In light of the City's decision as to the Award of a permit to sponsor the 1993 St. Patrick's Day Parade to an organization other than the AOH, namely the St. Patrick's Day Parade Committee, Inc., this

court believes that the instant action, challenging an order of the Commission on Human Rights to the AOH that ILGO be given the opportunity to march in this year's Parade, (*see* paragraph #2 of the orders at page 16), is moot.

Order of Justice Schlesinger, attached to the Hartnett Affidavit at Exh. 20.

This left the AOH in a "Catch–22" position: the Police Commissioner would not issue a permit for the St. Patrick's Day Parade to the AOH unless the New York City Human Rights Commission order was judicially set aside; and, the New York State Courts refused to consider the order of the New York City Human Rights Commission unless the New York City Police Commissioner issued the permit to the AOH.

Accordingly, on January 15, 1993, the AOH started the instant action for injunctive relief under 42 U.S.C. § 1983 (the Civil Rights Act) and under the First and Fourteenth Amendments to the Constitution of the United States. Specifically, the AOH seeks to enjoin the City defendants from depriving the AOH of those rights by refusing to issue to AOH the permit to conduct the 1993 St. Patrick's Day Parade.

At a conference on February 2, 1993, I advised all of the parties that the AOH could move for temporary relief or for summary judgment (without the necessity of further formal notice) by filing its motion papers on or before February 5, 1993, with responsive papers due from the City on February 11, 1993 and any reply papers by February 16, 1993. The City was deemed to have filed a formal answer and a cross-motion for summary judgment. Accordingly, I requested the submission of a joint statement of uncontested facts. Thereafter, I permitted ILGO to appear as an intervening defendant in this case. Various *amicus curiae* requested permission to file briefs on behalf of one side or the other. All were permitted.

Originally, the Corporate Committee was a defendant in this matter. On February 11, 1993, the Corporate Committee returned to the City the St. Patrick's Day Parade permit that it had been issued. The City then solicited applications for a new permit to conduct the 1993 New York St. Patrick's Day Parade.

The AOH filed the one and only timely application for the Parade permit.

On February 17, 1993, the City defendants, by their counsel, addressed the following letter to this court:

Dear Judge Duffy:

As we informed Your Honor in our letter of February 11, 1993, the facts underlying this case have changed as a result of the return of the permit granted to the Saint Patrick's Day Parade Committee. Since we reopened the application process, the City received one application for a permit for the parade submitted by the Ancient Order of Hibernians.

Today, the City defendants determined that they will not grant County AOH the permit it seeks because County AOH has announced that it will not comply with the order of the New York City Commission on Human Rights dated October 27, 1992 requiring County AOH to include the Irish Lesbian and Gay Organization in the parade under its own banner. Thus, the case is now neither moot nor premature as we stated last Thursday and we respectfully request that the Court render its decision.

Letter to this court from Corporation Counsel, dated February 17, 1993.

On Thursday, February 18, 1993, I advised all the parties that I would hold a hearing on Monday, February 22, 1993 to try to sort out the issues left for decision under the changed circumstances.

During this same period (the week of February 14, 1993) the AOH, the City, and ILGO had a conference in which they discussed whether they should request Justice Schlesinger of the State Court to reconsider her decision that the matter before her had become moot. Apparently, a conference call was made to Justice Schlesinger during which counsel for ILGO insisted that nothing had changed and asserted that the action in the New York State Supreme Court continued to remain moot. Tr. at 59. Apparently, Justice Schlesinger accepted ILGO's argument and did not change her determination as to the mootness of the *Beirne* case.

On the morning of February 22, 1993 argument was held before this court for approximately two hours. Advance notice of this argument was well publicized in the media with stories of the forthcoming argument being carried by every major New York City newspaper, and most New York City radio and television stations. No other applications for the Parade permit were filed as of the time of the argument, nor did any other parties request intervention in this case.

At the end of the argument, I once again requested of counsel to the parties that the facts within their control not be changed again so that a decision could be rendered as expeditiously as possible.

Late on that same afternoon, I received phone calls from counsel for the City defendants and the AOH advising me that there had been two new applications for the Parade permit and that an Order To Show Cause had been signed in the State Court as to why one of the applicants should not immediately receive the Parade permit.[3]

## DISCUSSION

■ The main problem with the logic of the decision of the City's Human Rights Commission is that it starts the analysis at the wrong end. The first question that should have been considered is not whether the New York St. Patrick's Day Parade is a public accommodation, but whether the Parade and its message constitutes speech protected by the First Amendment guarantee of Freedom of Speech. Insofar as a parade constitutes protected free speech, it cannot be a public accommodation.

■ A parade is, by its nature, a pristine form of speech. *See Perry Educ. Assoc. v. Perry Local Educator's Assoc.*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 152, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969); *Cox v. Louisiana*, 379 U.S. 536, 554–55, 85 S.Ct. 453, 464–65, 13 L.Ed.2d 471 (1965);

*Invisible Empire of the Knights of the Ku Klux Klan v. Mayor of Thurmont*, 700 F.Supp. 281, 286–87 (D.Md.1988). In parades, people gather together for the purpose of expressing their message. *See id.* The public thoroughfares of our nation are the public fora in which the issues of the day can be debated and where individuals seek to engage in basic expressive activity, such as parading. *Id.; Grayned v. City of Rockford*, 408 U.S. 104, 115, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972) (citing *Police Department of Chicago v. Mosley*, 408 U.S. 92, 94–96, 92 S.Ct. 2286, 2289–90, 33 L.Ed.2d 212 (1972)); *Hague v. Committee for Industrial Organization*, 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939). Every parade is designed to convey a message. *Id.* As such, a parade organized by a private sponsor is the quintessential exercise of the First Amendment right of freedom of expression. *Id.*

■ The First Amendment guarantees an individual the right to free speech, "a term necessarily comprising the decision of both what to say and what not to say." *Riley v. Nat'l Federation of the Blind of North Carolina*, 487 U.S. 781, 796–97, 108 S.Ct. 2667, 2677–78, 101 L.Ed.2d 669 (1987). In exercising this right, the message intended to be conveyed by a parade sponsored by a private organization is to be determined by the parade sponsor and not by the state or the city. *See Grayned*, 408 U.S. at 115, 92 S.Ct. at 2302; *Collin v. Smith*, 578 F.2d 1197, 1201 (7th Cir.), *cert. denied*, 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978); *Invisible Empire*, 700 F.Supp. at 286–87. To hold otherwise would give local government the right of censorship over the thoughts and speech of the people. *Id.; see also Pacific Gas & Electric Co. v. Public Utilities Commission*, 475 U.S. 1, 10–11, 15–17, 106 S.Ct. 903, 908–09, 911–12, 89 L.Ed.2d 1 (1986) (state could not compel company to include in its billing a third party's message it disagreed with); *Wallace v. Jaffree*, 472 U.S. 38, 48–55, 105 S.Ct. 2479, 2485–89, 86 L.Ed.2d 29 (1985)

---

**3.** One of the new applicants, the Brooklyn Night Court Emerald Society, served the parties on February 23 with a "Motion to Intervene and In Opposition to AOH's Motion for Relief and In Support of a Motion to Dismiss" returnable on February 23 before this court. This may have been intended simply as a lark. It clearly violates the Federal Rules of Civil Procedure and the Local Rules in various ways, but particularly with regard to the proper notice required to be given to the parties. In any event, I will treat it totally as a nullity.

(First Amendment adopted to curtail power of Congress to interfere with individual's freedom to "express himself in accordance with the dictates of his own conscience"); *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 256, 94 S.Ct. 2831, 2838, 41 L.Ed.2d 730 (1974) (forcing newspapers to print candidates' replies to editorials is an impermissible burden on editorial control and judgment); *Sherbert v. Verner,* 374 U.S. 398, 402, 83 S.Ct. 1790, 1792, 10 L.Ed.2d 965 (1963) (government may "not compel affirmance of a repugnant belief ... nor penalize or discriminate against individuals or groups because they hold views abhorrent to the authorities"); *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 634, 63 S.Ct. 1178, 1183, 87 L.Ed. 1628 (1934) (state has no power to force individual to profess any statement of belief).

█ The message that the AOH, as Parade sponsor, wishes to convey is to honor the patron saint of Ireland and to proclaim their allegiance to the Roman Catholic Church and its teachings. Plaintiff's Memorandum of Law In Support of Motion for Summary Judgment or a Preliminary Injunction ("AOH Mem.") at 9.

On the other hand, the Administrative Law Judge rejected this and found that the Parade is a place of public accommodation. Decision of Administrative Law Judge Maldonado, at 2, attached to the Hartnett Affidavit at Exh. 7 [hereinafter referred to as "ALJ Maldonado Decision"]. As to the message of the Parade, the Administrative Law Judge and the City Human Rights Commission determined that:

> The Parade is also a civic celebration, billed as the "largest civilian annual parade in the world" and is organized for the pleasure of all New Yorkers. It draws over 150,000 marchers and over two million spectators.
>
> ... [T]he Parade as "an American institution" which "celebrates the fact that all Americans, native and immigrant alike, enjoy the freedom of the City on the streets of New York and, by implication, throughout our great land." The organizers operate the Parade for the benefit of all New Yorkers and are concerned that "the total

> Parade ... remain large in numbers, orderly, and colorful in order to hold the respect and admiration of the citizens of New York, retain their good will and continue to have them as its supporters."

ALJ Maldonado Decision at ¶¶ 10–11. (citations omitted).

In restating the message of the Parade the Human Rights Commission went far beyond a mere re-articulation of it. No one has suggested that the Parade sponsors and their representatives are so bereft of fluency in the English language that, if they believed that the message of the Parade should be "secular" or "American institution" or "a celebration of freedom" or even traditional values, baseball and apple pie, the Commission would have had to make the statement for them. In fact the message was dramatically changed in content. This the City defendants cannot do without violating the First Amendment rights of the Parade sponsors. This is so fundamental as not to require citation.

It may well be helpful, however, to remind the parties of what the United States Supreme Court held in a slightly different context:

> The First Amendment protects the right of individuals to hold a point of view different from the majority and to refuse to foster, in the way [the State] commands, an idea they find morally objectionable.

*Wooley v. Maynard,* 430 U.S. 705, 715, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977).

The manner and means by which the message is conveyed is also a matter of constitutionally protected free speech. The AOH and the Parade sponsors have made it abundantly clear that they are unwilling to accept ILGO as a separate contingent in the Parade. Indeed, they seem willing to abandon the Parade to avoid that situation. Yet, The City Human Rights Commission has ordered them to "include the Irish Lesbian and Gay Organization in the parade under its own banner." *See* Letter to this court from Corporation Counsel, dated February 17, 1993.

In so doing the City defendants have violated the Parade sponsor's rights to free speech. *See Invisible Empire,* 700 F.Supp.

at 288. The United States Supreme Court has already held that "[c]ompelled access like that ordered in this case both penalizes the expression of particular points of view and forces speakers to alter their speech to conform with an agenda they do not set.... The Commission's ... order also impermissibly requires appellant to associate with speech with which appellant may disagree." *Pacific Gas,* 475 U.S. at 9, 15, 106 S.Ct. at 908, 911. That, however, is exactly what the City defendants are trying to do by requiring the inclusion of ILGO in the New York St. Patrick's Day Parade.

■ This is not to say that a governmental regulation may never restrict a parade. A municipality may constitutionally restrict the right to use the public streets, as they must exercise a great deal of control over traffic regulation and public safety. *Shuttlesworth,* 394 U.S. at 152, 89 S.Ct. at 939. Such restrictions, however, may seek to regulate only the time, place and manner of a parade, so long as these restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989) (citing *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984)). Additionally, incidental restrictions on speech have been upheld where the purpose of the offending regulation is unrelated to the content of the expression. *Ward,* 491 U.S. at 781, 109 S.Ct. at 2746. The controlling inquiry in such cases focuses on whether the government has regulated the speech because it disagrees with its content. *Id.* Thus, if the government's purpose underlying the regulation is justified without reference to the content of the regulated speech, then the incidental infringement of the First Amendment is constitutional, notwithstanding disparate impact. *Id.*

Here the City has attempted to change the message of the Parade and the way that message would be conveyed. The imposition of such conditions can hardly be confused with the permissible restrictions that regulate time, place or manner. Thus, because there is no "content neutral" justification for the City's actions which could excuse the infringement, they violate the First Amendment.

The AOH also raises the argument that the activities of the City defendants have violated the AOH's right to freedom of association under the First Amendment. There may well be substance to this argument.

■ Implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with whomever one chooses. *See Roberts v. United States Jaycees,* 468 U.S. 609, 622, 104 S.Ct. 3244, 3251, 82 L.Ed.2d 462 (1983); *Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 233-34, 97 S.Ct. 1782, 1798-99, 52 L.Ed.2d 261 (1977). This freedom of association embraces the concomitant right not to associate with whomever one chooses. *See Roberts,* 468 U.S. at 623, 104 S.Ct. at 3252 (citing *Abood,* 431 U.S. at 234-35, 97 S.Ct. at 1799-1800).

I find it unnecessary, however, to rule on this issue.

The AOH also argues that the City defendants have violated their religious freedom. I am in no way ruling on that particular issue nor do I believe that anyone can properly rule on it in the present state of this record.

Counsel have also directed my attention to a recent decision from a Massachusetts Superior Court regarding the Boston St. Patrick's Day/Evacuation Day Parade. *Irish American Gay, Lesbian, and Bisexual Group of Boston, et al. v. City of Boston, et al.,* Superior Court of Mass., Suffolk County, Civ. No. 92-1519 (Feb. 19, 1993). In the Boston case, the Court granted the Irish American Gay, Lesbian, and Bisexual Group of Boston an injunction to prevent the defendants from interfering with their participation in the parade. It is argued that this decision should persuade me to enforce the City defendants' order requiring the inclusion of ILGO in the AOH Parade.

The Boston Parade celebrates not only St. Patrick's Day, but also, Evacuation Day. Evacuation Day commemorates the March

17, 1776 departure of British troops from Boston. The parade conveys a general celebratory message in general support of "traditional values."

> Although the Court pressed counsel to articulate the 'views' or 'message' [sought to be] express[ed] by means of the parade, counsel could say nothing beyond a litany of 'traditional values,' which included the Red Sox and apple pie.

Memorandum and Order of the Court at ¶ 2. The fact that this "traditional values," multipurpose parade requires "detailed participation by city agencies in planing and execution" clearly illustrates the civic nature of the parade. From the Order of the Massachusetts Court, it appears that last year the exact same problem was before the Court and was resolved in the same way. No problem was caused thereby and no appeal was taken from the Order. In light of these factors, the Court held that the defendant permit-holders were "the custodians of a civic celebration."

The AOH and the Parade Committee, on the other hand, are private sponsors of the New York St. Patrick's Day Parade and seek to convey a real message in a parade devoted solely to celebrating St. Patrick's Day with minimal city involvement. The AOH, unlike the Boston sponsors, most certainly are not the "custodians of a civic celebration." I find this decision to be totally inapposite to the instant case.

In sum, in the case at bar involving only the New York St. Patrick's Day Parade, this court holds that the ruling of the City's Human Rights Commission is violative of the First Amendment in two aspects: (1) by rejecting the message that the AOH claimed for the Parade and by substituting its own version of what the Commission thought the message of the Parade was or should be, the City defendants have attempted to dictate what the Parade sponsors would think; and, (2) by forcing the inclusion of ILGO in the parade, the Commission sought to dictate how the Parade sponsors would express their thoughts. Such activity (telling citizens what they must think and how they must express themselves) is something one would expect from the "Thought Police" described by George Orwell. The humor of naming the thought police the "Human Rights Commission" is particularly Orwellian.

This court does not mean to suggest that the members of the City Human Rights Commission intentionally set out to violate the First Amendment to the Constitution. Surely, they are good persons, motivated by good intentions. But it is the American way for political leaders to seek to convince citizens of the correctness of some view by persuasion and not by fiat.

This court holds no brief for either side in this controversy. However, everyone should recognize that the undermining of the freedom of any individual is the undermining of the freedoms of us all. *See Collin v. Smith*, 578 F.2d 1197, 1210 (7th Cir.1978), *cert. denied*, 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978). Suffice it to say that the job of this court is to uphold the Constitution of the United States and that is all I am trying to do.

### THE REMEDY

Perhaps, because of the haste with which this case was brought on, without even formal motion papers, or the time pressure caused by the fact that the date for the Parade is so close at hand, no one has discussed the relief which should be granted. The demand in the Complaint requests this court to:

> (a) Preliminarily and permanently enjoin City defendants from continuing the acts, practices, and policies complained of herein which violate plaintiff's right to freedom of speech, expression, association and free exercise of religion as guaranteed by the First and Fourteenth Amendments to the United States Constitution;

> (b) Preliminarily and permanently enjoin City defendants from continuing the acts, practices, and policies complained of herein which violate 42 U.S.C. §§ 1983;

> (c) Direct Defendants Police Commissioner and Police Department to revoke, cancel and annul the permit issued to the Defendant Committee to parade on Fifth Avenue on March 17, 1993 and compel said City defendants to issue a permit to plain-

tiff to conduct a parade on Fifth Avenue on March 17, 1993;

(d) Grant a permanent injunction against the City defendants prohibiting them from obstructing or interfering with plaintiff's conducting of the Parade;

(e) Award attorney's fees to the plaintiff as authorized by 42 U.S.C. § 1988; and

(f) Grant such additional and further relief as the court deems just and equitable.

Complaint, *ad damnum* clause at 11.

The memorandum of the AOH submitted on its motion claims that it "is entitled to summary judgment granting a permanent injunction. In the alternative, plaintiff's motion for a preliminary injunction should be granted...." AOH's Mem. at 18.

Clearly, summary judgment is inappropriate in a case such as this where the facts have seemed to shift as the desert sands in the midst of a wind storm. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). This leaves the question as to whether a preliminary injunction should be issued to stop the City's violation of the AOH's constitutional rights to free speech. As I have outlined above, it is clear that the City has violated the AOH's right to freedom of speech. Normally a court only has to determine that a constitutional right is being violated as to one of the parties for an injunction to issue. In the instant case, however, entities other than the AOH also have constitutional rights which must be considered.

ILGO has not requested anything other than inclusion in the AOH Parade. It may be politic for the City to offer some other perquisite to ILGO, but this court cannot fashion any relief whatsoever for ILGO since it has failed to ask for any relief. One thing is certain, however, no one can force the inclusion of ILGO in the AOH Parade.

Nor can this court fashion any relief whatsoever for the other applicants for the St. Patrick's Day Parade permit because neither of them have filed proper motions to intervene in this court.

The last question then is what relief must be granted to the AOH. Over the years, the City has maintained a file of organizations entitled to parade permits. Indeed, Chief Judge Motley of this court in another parade case involving New York City said:

[The City] as a matter of administrative policy, reserves certain routes, dates, times and places for what have become annual events. For instance, a parade permit is reserved for the New York County Board of the Ancient Order of Hibernians for the St. Patricks [sic] Day Parade on March 17. A permit will be issued for no other parade on Fifth Avenue other than the Gay Pride Parade on the last day of June.

*Gay Veterans Association, Inc. v. The American Legion—New York County Organization*, 621 F.Supp. 1510, 1516 (S.D.N.Y.1985).

If it were not for the intervention of the patently unconstitutional Human Rights Commission decision in this matter, the AOH would have the permit to conduct the 1993 New York St. Patrick's Day Parade. It is entitled to that as preliminary relief; along with an order directing the City not to interfere with the conduct of the AOH's 1993 New York St. Patrick's Day Parade by requiring the inclusion of any contingent which has not been approved by the AOH and the Parade Committee. This order is preliminary in nature and is intended to cover only the 1993 New York St. Patrick's Day Parade.

SO ORDERED.