CONCORD ROD AND GUN CLUB, INC. *vs.* MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION & another.[1]

Middlesex. February 4, 1988. — July 5, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & O'CONNOR, JJ.

*Anti-Discrimination Law*, Public accommodation, Association. *Constitutional Law*, Freedom of association. *Words*, "Place of public accommodation."

The conclusion of a commissioner of the Massachusetts Commission Against Discrimination, adopted by the full commission and affirmed by a Superior Court judge, that a "rod and gun" club was a place of "public" accommodation, resort or amusement within the meaning of G. L. c. 272, §§ 92A and 98, was correct where the club was found to have a total absence of genuine selectivity in membership. [720-721]

An order of a commissioner of the Massachusetts Commission Against Discrimination, adopted by the full commission and affirmed by a judge of the Superior Court, applying the anti-discrimination statute, G. L. c. 272, §§ 92A and 98, to a "rod and gun" club and requiring the club to admit a certain female and to afford females the same membership benefits as males, did not, in the circumstances, impair the club members' rights under the First Amendment to the United States Constitution. [721-722]

CIVIL ACTION commenced in the Superior Court Department on December 24, 1985.

The case was heard by *Elbert Tuttle*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Francis E. Jenney* for the plaintiff.

*Leslie B. Greer* for the defendant.

*Marjorie Heins*, for the intervener, submitted a brief.

O'CONNOR, J. In this case, we review a decision and order of a commissioner of the Massachusetts Commission Against

---

[1] Donna Page, intervener.

Discrimination (MCAD), adopted by the full commission as its decision, requiring the Concord Rod and Gun Club, Inc. (Club), to admit the intervener, Donna Page, a female, to full membership in the Club, and requiring the Club to afford females the same benefits of membership as are afforded males. The MCAD decision was affirmed by a judge of the Superior Court in every respect but one. The commissioner had not awarded damages, and the judge remanded the case to the MCAD for an assessment of damages. On remand, the MCAD ordered the Club to pay Page $100 plus interest. The Club appealed from the Superior Court judgment. We transferred the case to this court on our own motion, and we now affirm the judgment below.

The case focuses on G. L. c. 272, §§ 92A and 98 (1986 ed.). Section 98 provides in relevant part that "[w]hoever makes any distinction, discrimination or restriction on account of . . . sex . . . relative to the admission of any person to, or his treatment in, any place of public accommodation, resort or amusement, as defined in section ninety-two A . . . shall be punished . . . and shall be liable to any person aggrieved thereby for . . . damages . . . ." Section 92A defines "a place of public accommodation, resort or amusement" as "any place, whether licensed or unlicensed, which is open to and accepts or solicits the patronage of the general public and, without limiting the generality of this definition, whether or not it be [a facility identified in the statute to which the public traditionally has access]." We must consider whether the commissioner correctly concluded that the Club, whose activities are carried out in a clubhouse and on surrounding grounds, is "a place of public accommodation, resort or amusement" within §§ 92A and 98, and, if so, whether § 98, as applied to the Club in the circumstances of this case, abridges the Club members' rights of association guaranteed by the First Amendment to the United States Constitution.

In this case, the commissioner, whose decision was adopted by the full commission, did not hear the evidence. Her decision was based on exhibits and transcripts of a hearing conducted by another commissioner, whose term expired before a decision

issued. The Club argues that, in the circumstances, the court should conduct an "independent de novo review" of the evidence. However, the Club does not argue that any of the commissioner's detailed and comprehensive subsidiary findings are incorrect or incomplete, nor does the Club even suggest that different findings would have more accurately reflected the truth. Rather, the clear thrust of the Club's contention is that, based on the findings that the commissioner made, the commissioner's conclusions that the Club is a place of public accommodation, resort or amusement, and that it may constitutionally be compelled to admit women to membership, are legally incorrect. Thus, we turn our attention directly to those questions. See G. L. c. 151B, § 6 (1986 ed.); G. L. c. 30A, §§ 14, 15 (1986 ed.). See also *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 224 (1978).

The Club does not dispute that it is a "place" under the relevant statute, see, e.g., *United States Jaycees* v. *Massachusetts Comm'n Against Discrimination*, 391 Mass. 594, 601-602 (1984), nor does it dispute that it is a place "of accommodation, resort or amusement." It argues only that it is not "public" under G. L. c. 272, §§ 92A and 98.

The following subsidiary facts found by the commissioner are relevant. The Club is a nonprofit Massachusetts corporation organized to encourage and to promote the proper use of rods, guns, and hunting dogs, to propagate fish and game when practicable, to further better relations between sportsmen and the community, to encourage social relations among its members, to assist in enforcing the fish and game laws, and to protect all fish and game. The Club's principal source of income is its membership dues. The Club also receives income from the rental of its property, from an annual clambake open to the public, and from beer sales to its members and guests.

The Club owns a secluded wooded area off Strawberry Hill Road in Concord. This wooded area contains a brook, a large pond, a clubhouse, an archery range, a trap shooting range, and a pistol range. During normal operation, only Club members and their guests are allowed on Club property. Guests may be male or female, although female guests are not allowed to remain on Club property after sunset.

Membership in the Club is limited to 300 persons, seventy per cent of whom must live in Concord or its abutting towns. Applicants for membership must be male, twenty-one years of age or have parental permission, and be eligible for a Massachusetts sporting license. There are no other "stated" restrictions on eligibility for membership. An applicant to the Club must obtain the signatures of three Club members on his application, one member as sponsor and two additional members as cosponsors. The Club has no set requirement of the length of time that a member is required to know a potential applicant in order for the member to sponsor the applicant for membership in the Club. Moreover, the Club has no policy on the degree of familiarity which a member is required to have with an applicant in order for the member to sponsor the applicant. In at least one instance, the president of the Club sponsored an applicant after only one brief conversation with him. A sponsor could have his own acquaintances sign as cosponsors even though the cosponsors were unfamiliar with the applicant.

In order to be accepted as a member, an applicant must appear before the Club's board of governors for an interview, and must be approved by the board. Also, the applicant's name must be published in the call of the Club's monthly general membership meeting following the approval by the board of governors, and the applicant must be approved by the membership at such a meeting.

Only three applicants who appeared for their interview were denied membership during a fifteen-year period prior to the agency hearing. Two of those applicants were men who had broken a gun law or a rule of the Club. The third applicant was Page, who was denied membership because she is a female. Nearly one-half of the individuals who completed application forms and obtained the signatures of three Club members failed to appear for their interview with the board and were automatically rejected. The commissioner inferred from that fact that "there were many applicants who had not been genuinely selected by their sponsors and co-sponsors on the basis of their demonstrated interests."

The records of the board of governors' meetings reflect that separate votes were not taken on each individual applicant. In-

stead, one en masse vote was taken on all the applicants presented at each meeting as a group. The number of applicants accepted at one time in that manner was as high as eleven. There was no requirement that a sponsor appear at the board of governors' meeting considering the sponsored applicant nor was there a requirement that the applicant appear at the general meeting voting on his application. In 1980, the year Page applied, and in 1981, every male applicant who appeared for his interview was unanimously approved by the board and unanimously approved by the membership. Fifty-two new members were admitted in 1980 and 1981. Based on these many facts, the commissioner concluded that the obtaining of sponsorship and cosponsorship was easy to do and was tantamount to acceptance of an applicant as a member of the Club.

In applying the law to the facts she had found, the commissioner properly began with the proposition expressed by this court in *Local Fin. Co.* v. *Massachusetts Comm'n Against Discrimination*, 355 Mass. 10, 14 (1968), that G. L. c. 272, § 92A, must be given "a broad, inclusive interpretation" in order to achieve its remedial goal of eliminating and preventing discrimination. This rule of liberal construction, the commissioner correctly reasoned, was reinforced by two subsequent statutory amendments. Prior to the enactment of St. 1971, c. 418, the language of § 92A, as appearing in St. 1953, c. 437, provided that "no place shall be deemed to be a place of public accommodation, resort or amusement which is owned or operated by a club or institution whose products or facilities or services are available only to its members and their guests." Statute 1971, c. 418, eliminated that exemption. By so doing, the Legislature manifested its intent that the anti-discrimination statute should apply to at least some membership clubs traditionally viewed as private. Thereafter, the Legislature's intent that such a club may, in appropriate circumstances, be deemed "a place of public accommodation, resort or amusement" was further demonstrated by the enactment of St. 1978, c. 331, exempting from the statute's reach any organization such as Boy Scouts and Girl Scouts, "authorized, created or chartered by federal law for the express purpose of promoting the health

. . . and character development of a single sex." The enactment of St. 1978, c. 331, would not have been necessary unless, in its absence, such organizations would fall within § 92A's definition of "a place of public accommodation, resort or amusement."

The commissioner recognized, as do we, that a membership organization is clearly different from traditional places of public accommodation like hotels and restaurants. Nevertheless, in view of the broad remedial purpose of the anti-discrimination statute and the appropriateness of giving the statute a "broad, inclusive interpretation," and taking into account the statutory history, the commissioner rightly concluded that the Club comes within the statute. While it is true that several factors tend to show that the Club is not open to, and does not accept, the patronage of the general public, the determinative factor in this case, requiring the conclusion of publicness, is the total absence of genuine selectivity in membership. The facts that the membership was limited to 300 persons and was geographically limited, and that the Club neither advertised nor had a profit motive do not require a different conclusion.

There is no First Amendment impediment to application to the Club of G. L. c. 272, §§ 92A and 98. Constitutionally protected freedom of association may be understood in two distinct senses; the right "to enter into and maintain certain intimate human relationships," and a right "to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts* v. *United States Jaycees*, 468 U.S. 609, 617-618 (1984). See *New York State Club Ass'n* v. *City of New York*, U.S. (1988) (108 S.Ct. 2225 [1988]); *Directors of Rotary Int'l* v. *Rotary Club*, 481 U.S. 537, 544-547 (1987). The commissioner's findings leading to the conclusion that the Club does not have a selective process for admittance to membership establish with equal force that application of the anti-discrimination statute to the Club does not impair the members' rights of intimate association. Furthermore, there is no basis to conclude that admittance of women to the Club's membership will burden the

male members' rights of expressive association. The statute does not require that women be admitted simply because they are women. It only prevents their exclusion simply because they are women. See *New York State Club Ass'n* v. *City of New York, supra* at        (*supra* at 2234).

*Judgment affirmed.*