IRISH-AMERICAN GAY, LESBIAN AND BISEXUAL GROUP OF
BOSTON & others[1] vs. CITY OF BOSTON & others.[2]

Suffolk. March 10, 1994. - July 11, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR & GREANEY, JJ.

*Anti-Discrimination Law*, Public accommodation, Association. *Constitutional Law*, Freedom of speech and press, Freedom of association.

A judge of the Superior Court correctly ruled that the annual St. Patrick's
Day-Evacuation Day Parade in Boston is a place of public accommodation within the scope of the public accommodation law, G. L. c. 272,
§ 92A and (8), and is subject to the prohibitions against discrimination
in any place of public accommodation set forth in G. L. c. 272, § 98.
[246-248] NOLAN, J., dissenting.

On the extensive record of an action seeking injunctive relief, brought by a
group of individuals who had been denied permission by the holders of
the parade permit (defendants) to march in the 1994 annual St. Patrick's Day-Evacuation Day Parade, the finding of the judge that the
parade was not an exercise of the defendants' expressive rights protected by the First Amendment to the United States Constitution was
not clearly erroneous. [248-250] NOLAN J., dissenting.

In an action brought on behalf of members of the Irish-American Gay,
Lesbian and Bisexual Group of Boston, seeking injunctive relief for the
refusal of the holders of the parade permit (defendants) for the annual
St. Patrick's Day-Evacuation Day Parade to allow the plaintiffs to
march in 1994, the judge committed no error in finding that the defendants violated the public accommodation law, G. L. c. 272, §§ 92A
and 98, by discriminating against the plaintiffs by reason of their sexual
orientation in refusing to admit them into the parade. [251] NOLAN, J.,
dissenting.

In a civil action, there was no merit to the defendants' arguments that the
public accommodation law, G. L. c. 272, §§ 92A and 98, was unconstitutionally vague or overbroad, facially or as applied to the defendants,

[1]Timothy Daley, Barbra Kay, and Cathleen Finn, individually and on
behalf of other members of the Irish-American Gay, Lesbian and Bisexual
Group of Boston.

[2]South Boston Allied War Veterans Council and John J. "Wacko"
Hurley, individually and as a representative member of the Council.

418 Mass. 238           239

Irish-American Gay, Lesbian & Bisexual Group of Boston *v*. Boston.

in the context of the defendants' unlawful discrimination against certain individuals on the basis of the individuals' sexual orientation. [251-252] NOLAN, J., dissenting.

In a civil action, meritless cross claims against the city of Boston were correctly dismissed. [253]

CIVIL ACTION commenced in the Superior Court Department on March 10, 1992.

The case was heard by *J. Harold Flannery*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Chester Darling* for John J. Hurley & another.

*Philip M. Cronin* (*Mary L. Bonauto* with him) for the plaintiffs.

*Claudia Billings McKelway*, Deputy Corporation Counsel (*Krisna M. Basu*, Assistant Corporation Counsel, with her) for the city of Boston.

*Andrew J. McCauley*, of New York, for Catholic League for Religious and Civil Rights, amicus curiae, submitted a brief.

*George P. Napolitano*, Special Assistant Attorney General, & *Elizabeth S. Hendler*, for Massachusetts Commission Against Discrimination, amicus curiae, submitted a brief.

LIACOS, C.J. The defendants, South Boston Allied War Veterans Council (council)[3] and John J. "Wacko" Hurley (Hurley), appeal from a judgment of the Superior Court dated December 24, 1993, which, among other things, granted permanent injunctive relief to the plaintiffs.[4, 5] On

---

[3]The council is an unincorporated association consisting of members elected from various South Boston veterans' groups.

[4]Unless otherwise indicated, we use the term "defendants" to refer to the council and to Hurley, collectively.

We acknowledge the assistance provided to us by the briefs of the amici, Massachusetts Commission Against Discrimination and The Catholic League for Religious and Civil Rights.

[5]We granted the defendants' application for direct appellate review. After oral argument on March 10, 1994, we issued an order on March 11, 1994, affirming the judgment of the Superior Court and noting that an opinion or opinions would follow. We did so upon the request of the city so

240            418 Mass. 238

Irish-American Gay, Lesbian & Bisexual Group of Boston *v.* Boston.

appeal, the defendants raise a myriad of issues: (1) whether the annual St. Patrick's Day-Evacuation Day Parade sponsored by the council and held in the South Boston section of Boston is speech protected by the First and Fourteenth Amendments to the United States Constitution and art. 1, as amended, art. 12, art. 16, as amended, and art. 19 of the Massachusetts Declaration of Rights; (2) whether the trial judge committed error when he "examined, evaluated and passed judgment on the content of the parade and deemed that content unworthy of constitutional protection, thereby enabling the court to apply statutory law to speech, in violation of the [council's] Federal and State [c]onstitutional rights of freedom of speech, expression, exercise of religion, assembly, and due process and equal protection of the laws, as enumerated in the First and Fourteenth Amendments [to] the United States Constitution, and arts. 1, 12, 16 and 19"; (3) whether a parade is a place of public accommodation, resort, or amusement under the public accommodation discrimination law, G. L. c. 272, §§ 92A, 98; (4) whether the judgment of the Superior Court constituted a "prior restraint of the [council's] Federal and State constitutional rights of freedom of speech, expression, exercise of religion, assembly, and due process and equal protection of the laws as enumerated in the First and Fourteenth Amendments . . . and arts. 1, 12, 16 and 19"; (5) whether the issuance of a parade permit by operation of law converts a place of public accommodation to the exclusive use of the private permit holder; (6) whether the judgment of the Superior Court "should be reversed as to the liability of the City of Boston to the Veterans as the findings of fact by the trial judge were clearly

that it could plan adequately for the public safety related to the parade, scheduled for March 20, 1994.

The order states: "ORDERED, that the following entry be made in the docket; viz., — A majority of the Justices having concluded that there was no error below, the judgment of the Superior Court, dated December 24, 1993, is affirmed. Opinion or opinions to follow." On March 15, 1994, we denied the defendants' motion for stay of judgment and order. This opinion is issued to explain the basis for that order.

418 Mass. 238                                               241

Irish-American Gay, Lesbian & Bisexual Group of Boston *v.* Boston.

against the weight of the uncontroverted evidence"; (7) whether "the City of Boston, acting under color of law, [did] threaten, intimidate, coerce, deprive and interfere with the [council's] Federal and State rights of freedom of speech, expression, exercise of religion, assembly, and due process and equal protection of the laws as enumerated in the First and Fourteenth Amendments . . . and arts. 1, 12, 16 and 19 . . . and in violation of the Massachusetts Civil Rights Act, G. L. c. 12, [§§ 11H, 11I], 42 U.S.C. § 1983, City of Boston Traffic Rules and Regulations Art. VIII (as amended through January 2, 1988); and City of Boston Ordinance of 1984, c. 16 (as amended by [c.] 17 and [c.] 18)"; (8) whether G. L. c. 272, §§ 92A and 98, are unconstitutionally overbroad and vague; and (9) whether the judgment of the Superior Court should be reversed because the "finding [of the trial judge] of discrimination [perpetrated by the council] was faulty in its reasoning, unsupported by the record, and against the weight of the evidence." We discuss those issues we deem relevant to this appeal.

We state the facts found by the trial judge.[6] In January, 1992, several individuals, including the plaintiff Barbra Kay, formed the Irish-American Gay, Lesbian and Bisexual Group of Boston (GLIB). GLIB is a social organization consisting of individuals who are homosexual or bisexual and their supporters. GLIB was formed to march in the annual St. Patrick's Day-Evacuation Day Parade[7] held in South Boston. GLIB's purposes are to express its members' pride in their dual identities as Irish or Irish-American persons who are also homosexual or bisexual, to demonstrate to the Irish-American community and to the gay, lesbian, and bisexual

---

[6]The judge presided over a four-day bench trial at which twelve witnesses testified and 113 exhibits were admitted in evidence.

[7]The judge noted Evacuation Day "commemorates General Washington's initial military victory over the British in 1776, and the British departure from South Boston. It is an officially recognized historical event in Massachusetts and a Suffolk County holiday. . . . The General Court of Massachusetts established Evacuation Day in 1938. See M. G. L. c. 6, § 12K."

community the diversity within those respective communities, and to show support for the Irish-American homosexual and bisexual men and women in New York City who were seeking to participate in that city's St. Patrick's Day Parade.

GLIB submitted an application to the council to march in the 1992 parade. The council denied the application, citing "safety reasons and insufficient information regarding [the] social club." Ultimately, GLIB was allowed to march in the 1992 parade under court order, with several restrictions placed on its participation that were not applied to other participants in the parade.

The following year, GLIB sought permission to participate in the 1993 parade. The council refused to admit the group, asserting that the "decision to exclude groups with sexual themes merely formalized that the Parade expresses traditional religious and social values." The judge found that excluding groups with sexual themes was itself a form of discrimination in violation of the public accommodation law's prohibition against discrimination based on sexual orientation.

At trial, Hurley "equivocated about his reasons for excluding GLIB" but ultimately testified that he would never allow them to march in the parade.[8] The judge concluded that the inconsistent and changing explanations for excluding GLIB demonstrated the "pretextual nature" of those explanations. The judge found that GLIB was excluded from the parade because of the sexual orientation of its members. Based on our review of the record before us, we cannot say that this finding of the judge was clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 384 (1993).

---

[8]The judge noted that "Hurley speaks for the Veterans Council and he testified on its behalf. He indicated that the objection to GLIB's participation was based on the belief, although unsubstantiated, that its members were also members of ACT-UP and Queer Nation. The group's potential for being disorderly was offered as a reason for excluding it. The defendant's final position was that GLIB would be excluded because of its values and its messages, i.e., its members' sexual orientation."

418 Mass. 238                                                    243

Irish-American Gay, Lesbian & Bisexual Group of Boston *v.* Boston.

The judge concluded also that the parade constitutes a public accommodation under G. L. c. 272, § 92A (quoted, *infra* at 246). In arriving at that conclusion, the judge relied on the lack of selectivity exerted by the veterans over the parade's participants and sponsors and the parade's historical roots. The judge found that "[d]uring the first half of this century, the South Boston Citizens Association and the City of Boston organized the various Evacuation Day activities. In 1901, the City celebrated the 125th anniversary of Evacuation Day by a parade, artillery salute, concert, and fireworks display, among other events. In 1947 Mayor James Michael Curley granted the [council] authority to organize and conduct the Parade. Since that time, the City has annually granted the [council] a parade permit. No other applicant has applied for the permit.

"Over the years, the Parade has featured as many as 20,000 participants and as many as 1,000,000 spectators. In 1992, the Parade featured about 10,000 participants and 750,000 spectators. The 1993 Parade, postponed due to inclement weather, had fewer than 10,000 participants, about 400,000 spectators, and was aired live by Boston's community access cable television channel. The Parade is one of the six largest parades held in Boston annually, and the largest New England event for Irish-Americans, their friends, and well-wishers."

The Parade has followed substantially the same route in South Boston for at least forty-seven years, "providing entertainment, amusement, and recreation to participants and spectators alike." The council has demonstrated a lack of selectivity in admitting participants and sponsors.[9] The judge

---

[9]The following, among others, sponsored or participated in the 1992 parade: Raytheon Corporation (Patriot Missile); Hallamore Clydesdale Horses; radio station 98.5 Mix FM; Boston municipal police department; Irish basketball players; South Boston resident group; Massachusetts Bay Transportation Authority color guard; "McGruff the Crime Dog"; South Boston Against Drugs (SOBAD); Marion Manor Nursing Home; National Parks Service; South Boston Baptist "Bible Trolley"; Vietnam Era Veterans; Princeman singing group; Leukemia Society; City Councillors Rosaria Salerno, Albert "Dapper" O'Neil, and John Nucci; radio station WZOU

characterized the parade by noting that "the interests and viewpoints represented are truly catholic: commercial . . . , religious . . . , political . . . , eleemosynary . . . , patriotic . . . , moral . . . , theatrical . . . , athletic . . . , public service . . . , trade union . . . , and so on. Indeed, since 1947 the only groups that have been excluded from the Parade besides GLIB have been the Ku Klux Klan and ROAR (Restore our Alienated Rights). Neither of these groups, however, is protected by M. G. L. c. 272, §§ 92A and 98."[10]

Additionally, the judge found that there are no written procedures, criteria, or standards for selecting participants or sponsors of the parade. Participants from previous parades are sent an application for the upcoming parade. Those who have not previously participated and who inquire about participation in the upcoming parade are sent applications. Some groups receive reimbursement for their parade-related expenses. The council votes on applications for participation in "batches," and the council generally does not inquire into the message or views of each applicant.[11]

---

94.5 FM; Houlihan's restaurant; Amrheins restaurant; Irish Mist restaurant; Shuberts Smoke Shop; Hub Video; Miss South Boston; Miss Ice-O-Rama; Miss Junior Ice-O-Rama; Lexington Minutemen; AFL-CIO; various high school bands; NORAID (Northern Ireland Aid); Massachusetts Citizens for Life; "Joey Clowns" of Salem, New Hampshire; and radio stations WZLX FM and WAAF.

In addition to many of the above, the following and others sponsored or participated in the 1993 parade: Boston Bruins hockey club, Massachusetts Port Authority, Budweiser beer, Mt. Washington Bank, Pepsi Cola, several candidates for city council, various State representatives and senators, the "Cycling Murrays," Citizens Committee for JFK Day, Massachusetts Water Pollution Control Association, South Boston Savings Bank, all declared and undeclared mayoral candidates in Boston, and others.

[10]ROAR was excluded because of its antibusing message. The judge made no finding as to why the Ku Klux Klan was excluded.

The council argues that the Massachusetts Right to Life group and a truck carrying antihomosexual signs also were excluded, and that the message of NORAID was limited. Assuming this to be true, we perceive no legal relevance of this fact to the findings of the judge or to the conclusion we reach.

[11]The judge found that, despite the formality of voting on applications by the council, decisions regarding participation are made by Hurley. The

Certain groups or individuals have been allowed to participate in the parade even if they have not submitted an application prior to the parade. In 1993, members of the Boston Bruins hockey club merely showed up at the start of the parade and were permitted to march, without having filed an application. Others, such as the Massachusetts Water Pollution Control Association and several mayoral candidates, gained entrance by making a contribution to the parade without filling out an application. The judge concluded that the procedures for admittance into the parade were not uniformly applied.

Based on the foregoing, the judge concluded that "it is impossible to discern any specific expressive purpose entitling the Parade to protection under the First Amendment. . . . [T]he [council's] Parade is not an exercise of their constitutionally protected right of expressive association. It is an open recreational event that is subject to the public accommodation law. . . . [T]he [council's] exclusion of GLIB from the . . . Parade violates M. G. L. c. 272, §§ 92A and 98, the public accommodations law; absent state action, the exclusion does not violate GLIB's rights under the Federal Constitution; the broadly inclusive Parade is not constitutionally protected expressive association; the [council's] cross-claims that the City has violated their constitutional and statutory rights are meritless."

The judge dismissed GLIB's claims against the city and entered judgment for the city on those claims.[12] The judge dismissed the council's cross claims against the city and entered judgment for the city on those claims. Finally, the judge issued the following order: "The defendants South Bos-

---

judge also found that, as to participation by GLIB, the council and Hurley are of the same opinion.

[12]In their brief, the plaintiffs did not take issue with the dismissal of their claims against the city. The plaintiffs seek to raise this issue for the first time in a reply brief. It does not appear from the record that the plaintiffs filed a cross appeal, and therefore it is doubtful that they had the right to file a reply brief. Mass. R. A. P. 16 (c), as amended, 399 Mass. 1217 (1987). Absent a cross appeal, the plaintiffs' claim of error on this issue is not properly before us.

ton Allied War Veterans Council, John J. "Wacko" Hurley, their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them who have actual notice of this Order: (a) are permanently enjoined from discriminating against the plaintiff on the basis of sexual orientation with respect to participation in the defendant's annual St. Patrick's/Evacuation Day Parade; (b) shall accommodate in the Parade in all respects representatives of the plaintiff on the terms and conditions generally applicable to all other Parade participants."

The plaintiffs invoked and the judge essentially relied on the public accommodation law, G. L. c. 272, §§ 92A and 98. Among the prohibitions in those sections is the prohibition against discrimination based on sexual orientation in the admission to or treatment in any place of public accommodation, resort or amusement. G. L. c. 272, § 98. "A place of public accommodation, resort or amusement" is "defined as and shall be deemed to include any place, whether licensed or unlicensed, which is open to and accepts or solicits the patronage of the general public and, without limiting the generality of this definition, whether or not it be (1) an inn, tavern, hotel, shelter, roadhouse, motel, trailer camp or resort for transient or permanent guests or patrons seeking housing or lodging, food, drink, entertainment, health, recreation or rest; (2) a carrier, conveyance or elevator for the transportation of persons, whether operated on land, water or in the air, and the stations, terminals and facilities appurtenant thereto; (3) a gas station, garage, retail store or establishment, including those dispensing personal services; (4) a restaurant, bar or eating place, where food, beverages, confections or their derivatives are sold for consumption on or off the premises; (5) a rest room, barber shop, beauty parlor, bathhouse, seashore facilities or swimming pool, except such rest room, bathhouse or seashore facility as may be segregated on the basis of sex; (6) *a boardwalk or other public highway*; (7) an auditorium, theatre, music hall, meeting place or hall, including the commons halls of buildings; (8) *a place of public amusement, recreation, sport, exercise or entertainment*; (9)

a public library, museum or planetarium; or (10) a hospital, dispensary or clinic operating for profit . . ." (emphasis supplied). G. L. c. 272, § 92A.

The judge ruled that the parade was a place of public accommodation within the ambit of § 92A. The language of § 92A itself and our case law require that the statute be given a broad and inclusive interpretation. *Concord Rod & Gun Club, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 402 Mass. 716, 720 (1988). *Local Fin. Co.* v. *Massachusetts Comm'n Against Discrimination*, 355 Mass. 10, 14 (1968). Section 92A itself specifically includes "a boardwalk or other public highway," G. L. c. 272, § 92A (6), and also includes "a place of public amusement, recreation, sport, exercise or entertainment," G. L. c. 272, § 92A (8). The plain language of the statute shows that the St. Patrick's Day-Evacuation Day Parade falls within the scope of the public accommodation law. The parade occurs on the public streets of South Boston. Nothing in § 92A or any other statute suggests that a boardwalk or other public highway loses its character as a place of public accommodation, resort, or amusement, which it gains by operation of that statute, merely because a parade is conducted there. Given that the statute is remedial and was intended to be interpreted broadly and inclusively, *Concord Rod & Gun Club, Inc.*, *supra*, such a narrowing interpretation would be contrary to the intent of ·the Legislature which we have heretofore perceived.

In addition, the judge found that the parade provides entertainment, recreation, and amusement to the participants as well as to the spectators, and that, in essence, almost any individual or group would be admitted to the parade if they either apply or show up at the start of the parade and offer to make a contribution to the council.[13] We cannot say,

---

[13]The defendants argue that, by operation of law, issuance of a parade permit closes the streets of the parade route to the public. We need not decide whether that is true. The findings of the judge suggest that virtually any member or group drawn from the public may apply or pay to enter the parade. Thus, while spectators along the route during the parade cannot join the parade, they most likely would have been able to join if they had

based on the evidence in the record before us, that these findings by the trial judge were clearly erroneous. See Mass. R. Civ. P. 52 (a); *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 384 (1993). Thus, the parade additionally falls within the public accommodation law under G. L. c. 272, § 92A (8).[14]

The defendants assert that the public accommodation law, as applied to the parade, violates their rights under the First Amendment to the United States Constitution.[15] In discuss-

applied or appeared at the start of the parade and paid a fee. Under the defendants' reasoning, a restaurant which admits only diners who have made reservations or those who generously tip the maitre d' would be exempt from the public accommodation laws. Such a result would be contrary to the purposes of the public accommodation laws. See *Concord Rod & Gun, Inc., supra.*

[14]The defendants argue that, since the parade is an event rather than a fixed, physical location, it is not a "place" as required by G. L. c. 272, §§ 92A and 98. The common meaning of the word indeed has physical connotations, but it also has temporal connotations as well. See Webster's Third New Int'l Dictionary 1727 (1961). In light of the remedial nature of this statute, and the Legislature's intention that it be interpreted broadly and with an eye toward inclusiveness, we cannot adopt the restrictive definition of "place" advanced by the defendants. *Concord Rod & Gun Club, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 402 Mass. 716, 720 (1988). *Local Fin. Co.* v. *Massachusetts Comm'n Against Discrimination*, 355 Mass. 10, 14 (1968). See *United States Jaycees* v. *Massachusetts Comm'n Against Discrimination*, 391 Mass. 594, 611-612 (1984) (Abrams, J., concurring in part and dissenting in part, with whom Hennessy, C.J., and Liacos, J., joined).

The defendants' reliance on the majority opinion in *United States Jaycees*, is misplaced. In that case, the organization was found not to be a place of public accommodation because it maintained no physical place of operations in Massachusetts. *United States Jaycees, supra* at 603. It cannot be said of the parade that it is not associated with some physical place or location in Massachusetts.

[15]The defendants attempt to invoke the free speech and associational rights guaranteed by the Constitution of the Commonwealth. Aside from referring to our Constitution in the argument headings of their brief, however, the defendants make no separate argument under our Constitution. Accordingly, the defendants have waived those issues and we do not address them. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Similarly, the defendants do not argue in their brief as to their asserted rights under the religious freedom and equal protection provisions of either the Massachusetts or the Federal Constitution. We do not address those issues. *Id.*

418 Mass. 238                                              249

Irish-American Gay, Lesbian & Bisexual Group of Boston *v.* Boston.

ing the First Amendment rights of the defendants, the judge referred to their right of expressive association. See generally *Directors of Rotary Int'l* v. *Rotary Club of Duarte*, 481 U.S. 537, 544-549 (1987). On appeal, the defendants argue that their right to freedom of speech was implicated and that this right, see generally *Shuttlesworth* v. *Birmingham*, 394 U.S. 147, 152 (1969), not their right of expressive association, was the operative right in this case. For the purposes of this case, however, we need not decide whether the free speech rights or the expressive association right, or both, might be implicated by the factual situation asserted by the defendants. This is so because, as the judge found, it is "impossible to discern any specific expressive purpose entitling the Parade to protection under the First Amendment."[16]

The defendants assert that a parade is a "pristine form of speech," and refer us to *New York County Bd. of Ancient Order of Hibernians* v. *Dinkins*, 814 F. Supp. 358 (S.D.N.Y. 1993) (*Hibernians*), among other cases. That case involved a group of homosexuals and bisexuals who wanted to march in the New York City St. Patrick's Day Parade. *Id.* at 360-361. At the outset, we note that *Hibernians* is distinguishable from the facts of this case because in *Hibernians*, the judge found that the Ancient Order of Hibernians in fact had used the parade as a means of expression, that the admission process was selective, and that it had adopted rules to prevent parade participants from using that parade as a forum to express views inconsistent with the views of the Ancient Order of Hibernians or the Roman Catholic Church. *Hibernians, supra* at 361-362, 367.[17] Such is not the case here. Furthermore, contrary to the assumption of the defendants, not

---

[16]To be clear, the inquiry focuses on the rights of the members of the council and whether they exercised those rights through the parade, not on the rights of the parade or the parade participants.

[17]We also note that the New York parade celebrates only St. Patrick's Day, while the Boston parade celebrates, in addition, Evacuation Day. See *New York County Bd. of Ancient Order of Hibernians* v. *Dinkins*, 814 F. Supp. 358, 368-369 (S.D.N.Y. 1993). It was partly on this basis that the judge characterized the Boston parade as a "public event."

250 418 Mass. 238

Irish-American Gay, Lesbian & Bisexual Group of Boston *v.* Boston.

every parade is per se an exercise of those rights protected by the First Amendment. *Shuttlesworth* v. *Birmingham, supra* ("parading *may* nonetheless *constitute* [a] method[ ] of expression entitled to First Amendment protection" [emphasis supplied]).[18]

In order to rely on the protections of the First Amendment for speech or expressive association, the defendants initially had to demonstrate that the parade truly was an exercise of those First Amendment rights. *Clark* v. *Community for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). This, the judge found, they did not do.

In arguing for reversal, the defendants point to evidence in the record suggesting that the parade did have an intended message (i.e., that the parade was intended as an expressive vehicle). This evidence and other extensive evidence, including a videotape of the 1993 parade, however, were before the judge when he made his decision, and we assume that he considered all the evidence. It was for the judge to assign the appropriate weight and credibility to the evidence presented to him. The defendants failed to demonstrate and, on our own review of the record, we could not conclude that the findings of the judge were clearly erroneous. Mass. R. Civ. P. 52 (a). *Cox* v. *New England Tel. & Tel. Co., supra.*[19]

---

[18]We note also that we uphold the findings and rulings of the judge based on the record before us, particularly the history and nature of the parade here in issue. We do not suggest that every parade is nonexpressive or that every parade is necessarily a place of public accommodation. Rather, we base our conclusions on the unique nature of the facts found as to the parade in controversy.

[19]The dissent suggests that the finding of the judge that the parade did not have an expressive purpose was clearly erroneous because the parade provides entertainment to the spectators. Aside from the fact that the defendants themselves did not assert this as evidence of an expressive purpose, we are puzzled by the dissent's assertion, without citation, that the mere provision of entertainment would transform the parade into an expressive event. This assertion is especially puzzling in light of the detailed and exhaustive discussion by the judge of the evidence which led him to conclude that the parade was a civic, nonexpressive celebration. Cf. *Augat, Inc.* v. *Aegis, Inc.*, 417 Mass. 484, 497 (1994) (Nolan, J., dissenting) (this court may not "ignore both the record and the trial judge's findings of fact

We conclude, therefore, that the judge committed no error when he found that the defendants discriminated against the plaintiffs because of the plaintiffs' sexual orientation in refusing to admit them into the parade, which is a place of public accommodation. Likewise, there was no error in his finding that the parade was not used by the council for expressive purposes, and that, as a result, the defendants could not cloak their discriminatory acts in the mantle of the First Amendment.

The defendants argue that the public accommodation law, G. L. c. 272, §§ 92A and 98, is unconstitutionally vague and overbroad. It does not appear from the record, submitted by the defendants, that they raised these issues below. We shall address them nevertheless because the claim is of possible public significance and because we can dispose of them briefly.

The defendants argue that the public accommodation law is overbroad because it reaches constitutionally protected speech in that it allows the court to examine the content of speech with standardless discretion. This is not so. By their terms, G. L. c. 272, §§ 92A and 98, facially do not reach speech or expression or association protected by the First Amendment. They do not allow a judge, or any public official, to examine the content of speech.[20] Nor would we inter-

by baldly 'assuming' facts on its own to reach an alternative conclusion which it feels is appropriate").

The dissent's reliance on *Wooley* v. *Maynard*, 430 U.S. 705, 715 (1977), is misplaced. *Post* at 255, 256, 257. The private automobile of a New Hampshire resident could not possibly be characterized as a public accommodation. Here, on the contrary, the judge found, we agreed, and the dissent assumes, that the parade is a public accommodation within the statute. Thus, the burden was on the defendants to demonstrate that they were exercising their First Amendment rights and as a result were entitled to exemption from the public accommodation laws. See *Clark* v. *Community for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).

[20]Contrary to the defendants' assertion, the judge did not inquire into the content of speech in this case. Instead, he examined whether there existed speech or any other activity protected by the First Amendment. That he permissibly can, and must, do. See *United States* v. *O'Brien*, 391 U.S. 367, 376 (1968) (not all conduct is protected speech even if so labeled by the actor); *Clark*, *supra* at 293 n.5 (one seeking relief under First Amend-

pret those sections so that they could reach and unconstitutionally infringe on speech. Cf. *R.A.V.* v. *St. Paul, Minn.*, 505 U.S. 377, 382 (1992); *Forsyth County, Ga.* v. *Nationalist Movement*, 505 U.S. 123, 130-131 (1992); *Broadrick* v. *Oklahoma*, 413 U.S. 601, 613 (1973).[21] We already have concluded that, in this case, the public accommodation law did not infringe on the defendants' First Amendment rights.

The defendants' vagueness argument is that " 'men of common intelligence must necessarily guess at [the] meaning [of the public accommodation law].' *Connally* v. *General Construction Co.*, 269 U.S. 385, 391 (1926)." The defendants argue this is true, because three State judges (two in the Superior Court and one in the Appeals Court) have interpreted the statutes as reaching parades and one Federal judge has suggested that the statute was ambiguous.

We note that the judges mentioned by the defendants did not find that the statute applied to parades in general, but rather to the St. Patrick's Day-Evacuation Day Parade in particular, because of the unique characteristics of the parade. The defendants' argument rests on the assumption that the statute reaches their speech. The judge below found and we have affirmed, however, that the defendants did not prove that they truly were exercising First Amendment rights. Thus, their vagueness argument fails because it rests on a faulty assumption. Furthermore, the public accommodation law gives persons of ordinary intelligence a reasonable opportunity to know what is prohibited, provides standards to those who must enforce those laws, and does not inhibit the valid exercise of First Amendment rights. See *Grayned* v. *Rockford*, 408 U.S. 104, 108-109 (1972).

---

ment must show that he is entitled to it, since there is no presumption of expressiveness).

[21]We leave open for an appropriate case the question whether the public accommodation law permissibly could be applied to a genuine exercise of First Amendment rights. See *R.A.V.* v. *St. Paul, Minn.*, 505 U.S. 377, 381-393 (1992).

418 Mass. 238                                            253

Irish-American Gay, Lesbian & Bisexual Group of Boston *v.* Boston.

Because the defendants had no right to discriminate against members of GLIB, by operation of logic the city could not possibly have interfered with or infringed on any of their rights as asserted by the defendants. Thus, the judge properly dismissed the defendants' cross claims against the city.

NOLAN, J. (dissenting). Today will be regarded as a sad and frustrating day in the history of the First Amendment to the United States Constitution. Today, a majority of this court upholds, and thereby endorses, a trial judge's flagrant violation of the free speech rights of citizens of this Commonwealth. The majority acquiesces in a judge's order instructing a private group that if it wishes to express itself at all, it must include in its expression a particular idea, one with which the group does not agree. One must strain to recall or even to imagine such an obvious violation of the revered right to free speech.

The majority upholds a Superior Court judge's decision that the South Boston Allied War Veterans Council's (Veterans Council) exclusion of the Irish-American Gay, Lesbian and Bisexual Group of Boston (GLIB) from the St. Patrick's Day-Evacuation Day Parade violates GLIB's members' statutory right to be free from discrimination on the basis of their sexual preference in places of public accommodation, and that the application of the statute to the facts of this case does not violate the Veterans Council's rights under the First Amendment. It is because I conclude that the Veterans Council's rights were violated by the judge's decision and order compelling it to allow GLIB to march and express its message in the Veterans Council's parade that I dissent from the decision of the majority.

1. *G. L. c. 272, §§ 92A, 98.* The majority finds no error in the judge's determination that the conduct of the Veterans Council in excluding GLIB from its parade violates the Commonwealth's public accommodation law, G. L. c. 272, §§ 92A, 98. I do not fully concur with the judge's reasoning in determining the applicability of the statute. Further, for

reasons discussed, *infra*, I do not agree that the judge's findings support his conclusion that the conduct of the Veterans Council violated the statute, even if it otherwise applies. I reserve extended discussion on these matters, however, and proceed to issues concerning rights under the First Amendment. I shall assume for the purpose of the following discussion that the statute applies to the conduct of the Veterans Council.

2. *First Amendment.* The judge limited his discussion of the First Amendment to the freedom of expressive association. He ruled that the freedom of speech was not at issue. This determination is erroneous. The defendants' freedom of speech is certainly at issue in this case — and was properly raised and argued[1] — and is violated by the judge's application of G. L. c. 272, §§ 92A, 98.

a. *Freedom of speech.* The First Amendment to the Constitution of the United States reads, in part: "Congress shall make no law . . . abridging the freedom of speech." Through the Fourteenth Amendment to the United States Constitution, the First Amendment limitation on Congress's power to legislate is applied to the legislative power of the States. *Wallace* v. *Jaffree*, 472 U.S. 38, 48-49 (1985). Further, "[t]hat the action of state courts and judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established." *Shelley* v. *Kraemer*, 334 U.S. 1, 14 (1948). Thus, it is as constitutionally objectionable for a judge sitting in a court of this Commonwealth to issue an order improperly "abridging the freedom of speech," as it is for Congress to enact a law doing the same.

As a general proposition, the State acts within its power when it enacts reasonable "time, place and manner" regula-

---

[1]The Veterans Council presented argument on the freedom of speech throughout the proceedings in this case. In particular, argument on the issue was presented at trial, in the defendants' memorandum in support of proposed findings of facts and proposed conclusions of law, and in the defendants' briefs on appeal.

418 Mass. 238                                                         255

Irish-American Gay, Lesbian & Bisexual Group of Boston *v.* Boston.

tions which affect speech or expression. *Cox* v. *New Hampshire*, 312 U.S. 569, 576 (1941) ("If a municipality has authority to control the use of its public streets for parades or processions, as it undoubtedly has, it cannot be denied authority to give consideration, without unfair discrimination, to time, place and manner in relation to the other proper uses of the streets"). Conversely, restrictions on the content of speech are generally improper. See *Riley* v. *National Fed'n of the Blind of N.C.*, 487 U.S. 781, 798 (1988) ("[The State's] content-based regulation is subject to exacting First Amendment scrutiny"); *Southeastern Promotions, Ltd.* v. *Conrad*, 420 U.S. 546, 558 (1975), quoting *Bantam Books, Inc.* v. *Sullivan*, 372 U.S. 58, 70 (1963) ("Any system of prior restraint . . . 'comes to this Court bearing a heavy presumption against its constitutional validity' "); *Police Dep't of Chicago* v. *Mosley*, 408 U.S. 92, 96 (1972) ("government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views"). The freedom of speech comprises both the right to speak and the right to refrain from speaking. *Riley, supra* at 795. *Wooley* v. *Maynard*, 430 U.S. 705, 715 (1977). Thus, "[t]he First Amendment protects the right of individuals . . . to refuse to foster . . . an idea they find morally objectionable." *Wooley, supra*. "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley, supra*.

In the present case, the judge's decision and order requires the Veterans Council to allow the members of GLIB to march in the parade as an identifiable group.[2] As noted by the judge and the majority, GLIB's organizational purposes are expressive in nature: to express its members' pride in their sexual preference; to demonstrate to the community the

---

[2]The judgment states in part: "[The defendants] shall accommodate in the Parade in all respects representatives of [GLIB] on the terms and conditions generally applicable to all other Parade participants." His decision makes clear that this entails allowing the members of GLIB to march in a group, identifying themselves as members of the group, and identifying the group through a banner.

diversity which exists therein; and to show support for homosexuals and bisexuals in New York who sought to march in a St. Patrick's Day Parade in New York City. The Veterans Council, as license holder of the St. Patrick's Day-Evacuation Day Parade, determines who marches in the parade. Except for GLIB, there would be no group marching in the parade whose message supports homosexuality or bisexuality. Therefore, the judge's decision and order permitting GLIB to march as an identifiable group results in GLIB's message being added to the parade. This is "[m]andating speech that [the Veterans Council] would not otherwise make," and is thus content-based regulation. *Riley, supra.*

Supreme Court cases concerning content-based regulation of speech examine such regulation with a strict scrutiny, or "exacting" scrutiny standard. See, e.g., *Riley, supra* at 798; *Pacific Gas & Elec. Co.* v. *Public Utils. Comm'n of Cal.*, 475 U.S. 1, 19-20 (1986); *Wooley, supra* at 716. If we assume that evisceration of discrimination on the basis of sexual preference is a compelling State interest, the judge's action in this case is not narrowly tailored to attaining that end: "[T]he State can serve that interest through means that would not violate [defendants'] First Amendment rights." *Pacific Gas & Elec. Co., supra* at 19. To compel the Veterans Council to express GLIB's message is not narrowly tailored to the State's interest. It unnecessarily hampers the free speech of the Veterans Council. It goes beyond merely regulating discriminatory conduct, and requires a private group, the Veterans Council, to promote GLIB's ideals. This is unconstitutional: "[W]here the State's interest is to disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message." *Wooley, supra* at 717.

It is important to note that the Veterans Council does not need a narrow or distinct theme or message in its parade for it to be protected under the First Amendment. Both the judge and the majority try to illustrate that the parade is a public celebration with no distinct, unified theme; the impli-

418 Mass. 238                                      257

Irish-American Gay, Lesbian & Bisexual Group of Boston *v.* Boston.

cation is that it is not expressive activity, and is therefore not worthy of First Amendment protection. This analysis is erroneous for two reasons. First, regardless of whether the parade has one message, ten messages, or no message at all, if GLIB's particular message is not in the parade, it cannot constitutionally be forced on the Veterans Council. Thus, although an individual who drives his automobile may have no expressive purpose for doing so, the State cannot require him to foster a message while driving that he otherwise would not. *Wooley, supra* at 717 (violation of the First Amendment to require defendants to display "Live Free or Die" on their license plates). Second, the finding that the parade lacks an expressive purpose is clearly erroneous. The Veterans Council obtains a license, collects funds, and privately organizes the St. Patrick's Day-Evacuation Day Parade each year. They do so knowing that their efforts will provide entertainment to the hundreds of thousands of spectators who line the streets of the South Boston section of Boston to watch in celebration of St. Patrick's Day and Evacuation Day. The judge would have us believe that the Veterans Council and all the parade participants show up solely for their own entertainment, and that any entertainment of the viewing public is merely incidental.[3] This defies logic, yet is just one of many gaps in reason created by the trial judge's flagrant efforts to forgo extending to the Veterans Council their deserved First Amendment rights.

The judge's order clearly violates the Veterans Council's freedom of speech.

b. *Freedom of association.* The judge determined, and the majority agreed, that the Veterans Council's First Amend-

---

[3]The judge relies on the Supreme Court case of *Dallas* v. *Stanglin*, 490 U.S. 19, 25 (1989), wherein the Court ruled: "the activity of . . . dance-hall patrons — coming together to engage in recreational dancing — is not protected by the First Amendment." The case is inapposite. Unlike the participants in the Veterans Council's parade, patrons in the dance hall did not gather to dance for the purpose of entertaining others in celebration of a holiday. The parade is conducted for the entertainment of hundreds of thousands of people; the dance-hall patrons whose conduct was at issue in *Dallas*, did not gather for the purpose of entertaining others.

ment freedom of expressive association is not unconstitutionally infringed by requiring GLIB to march as a group in the parade. I disagree.

The freedom of expressive association is the "right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, [among others]." *Roberts* v. *United States Jaycees*, 468 U.S. 609, 618 (1984). Much like the related, broader freedom of speech, "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Id.* at 623, citing *Abood* v. *Detroit Bd. of Educ.*, 431 U.S. 209, 234-235 (1977). Infringements on the right not to associate are examined under strict scrutiny: "Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts* v. *United States Jaycees*, *supra*, and cases cited. It is established, however, that, "[i]f a club seeks to exclude individuals who do not share the views that the club's members wish to promote," the law may not require association. *New York State Club Ass'n* v. *City of New York*, 487 U.S. 1, 13 (1988).

As discussed above, the Veterans Council organizes the parade for expressive purposes: to entertain the hundreds of thousands of spectators who view the parade each year in celebration of St. Patrick's Day and Evacuation Day. Again assuming, without deciding, that evisceration of discrimination on the basis of sexual preference is a compelling State interest, State regulation in furtherance of this end must be narrowly tailored to attaining it. Thus, requiring the Veterans Council not to exclude the members of GLIB on the basis of their sexual preference may be a constitutionally valid infringement on the Veterans Council's rights; however, precluding the Veterans Council from disallowing the members of GLIB from expressing themselves as a group is not related to the State's interest, and is therefore unconstitutional. In other words, because the judge's decision and order require the Veterans Council to allow GLIB to express itself, they

violate the rule that, "[where] a club seeks to exclude individuals who do not share the views that the club's members wish to promote, the Law [may] erect[ ] no obstacle to this end." *New York State Club Ass'n, supra.*

It is important to note that this case is distinguishable from those that involve exclusion of individuals whose message and protected status may be inseparable. For example, in *Invisible Empire of the Knights of the Ku Klux Klan* v. *Mayor, Bd. of Comm'rs, & Chief of Police of Thurmont,* 700 F. Supp. 281 (D. Md. 1988), a private group comprising numerous African Americans sought to enforce against the Ku Klux Klan (KKK) an antidiscrimination statute in an effort to participate in the KKK's planned parade. The Federal District Court determined that permitting the group to participate would be unconstitutional, as the mere presence of African Americans in the KKK's parade would frustrate the KKK's message of white separatism. *Id.* at 289. This is distinguishable from the present case: the mere presence of homosexuals or bisexuals in the parade likely would not frustrate any message of the Veterans Council. This is so because GLIB's message is separable from its members' status as homosexuals or bisexuals. Thus, the presence of homosexuals or bisexuals, not outwardly identifiable as such, in the parade would likely not affect any message of the Veterans Council, while the presence of those same individuals marching as an identifiable group — the Irish-American Gay, Lesbian and Bisexual Group of Boston — would.

As discussed above, mandating mere association in this case may be constitutional; mandating a message is not. At the very least, the judge's decision and order, insofar as it compels the Veterans Council to allow the members of GLIB to march and express themselves as a group in the Veterans Council's parade violates the First Amendment.

3. *Other matters.* Aside from the judge's improper refusal to address the issue of freedom of speech and his erroneous analysis of the issue of freedom of association, his decision and order includes other serious errors of law, reason, and fact which warrant discussion.

In his decision, the judge equates excluding a group on the basis of its message or values with exclusion on the basis of its members' sexual preference: "The defendant's final position was GLIB would be excluded because of its values and its message, *i.e., its members' sexual orientation*" (emphasis added). This is clear error, and may have led to a baseless finding that the Veterans Council discriminated on the basis of GLIB's members' sexual preference. If the Veterans Council excluded GLIB because of its message, and not specifically because of its members' sexual preference, then the statute was not violated. See G. L. c. 272, § 92A. Indeed, overwhelming evidence exists throughout the record which indicates that GLIB was excluded because of its message, and not because of its members' sexual preference.[4] Conversely, the only evidence which supports a finding of discrimination was that many of GLIB's members are homosexual and GLIB was excluded, and that the Veterans Council had, in the past, proffered different reasons for its decision to exclude GLIB.[5]

Relatedly, the judge stated that, even if the Veterans Council's assertion that it excluded GLIB under a policy of excluding all sexual themes was true, "[e]xcluding all sexual themes . . . contravenes the First Amendment's prohibition on content-based restrictions." This is a flagrantly erroneous statement of law. The judge found that there was no State action here; certainly private parties may exclude any topic

---

[4]There is no evidence in the record that the Veterans Council ever inquired into the sexual preference of any person intending to march in the parade, including the members of GLIB; there is no evidence that the Veterans Council ever excluded any homosexual or bisexual not a member of GLIB; the judge found that not all members of GLIB are homosexual or bisexual; there is evidence in the record that the Veterans Council would let the members of GLIB march without a banner identifying the group.

[5]It is important to note that each of the reasons for excluding GLIB proffered by the Veterans Council is not discriminatory. At various times throughout the past years, the Veterans Council proffered the following reasons for excluding GLIB: the Veterans Council was not provided with enough information about GLIB on its application; it was concerned with the safety of the group's members and the members of the public; and it excluded all sexual themes from the parade.

or theme they want from their expression. This statement is an example of quintessential content-based regulation of speech which is plainly prohibited by the First Amendment, and it illustrates the confused understanding of the First Amendment by the judge and by this court, through its acquiescence.

4. *Conclusion.* That the judge's decision and order requiring the Veterans Council to allow GLIB to march and to express itself as a group is a flagrant violation of the Veterans Council's First Amendment rights is an unavoidable conclusion. The judge's crude regulation of the content of the Veterans Council's speech is epitomized by the last sentence of his decision: "Inclusiveness should be the hallmark of [the Veterans Council's] parade."

We have never been in the business of protecting only internally consistent, narrowly focused, politically sensitive speech. It is a travesty that we today vacate this precedent. Our holding today, while, to some, seemingly pushes us forward, really pushes us back over 200 years, to an era that lacked the protection guaranteed by the First Amendment. I dissent.